**Frank and Michelle DOMEISEN, Jeff and Jean Toner, Marian Papale, Steve and Lisa Boots, Petra and Mohammed Zaidi, Gary and Laura Metzinger, Len and Lisa Cyterski, Alan and Paula Klein, Joseph and Mary Ann Doorley, Kevin and Katie Young, Kenneth and Elizabeth Mowry, and Matthew and Vicki Hetzinger, Appellants**

v.

**The ZONING HEARING BOARD of O'HARA TOWNSHIP.**

Commonwealth Court of Pennsylvania.

Argued Oct. 7, 2002.

Decided Jan. 10, 2003.

---

David F. Toal, Pittsburgh, for appellants.

Robert W. Goehring, Pittsburgh, for appellee, ZHB of O'Hara Township.

Templeton Smith, Jr., Pittsburgh, for appellee, John A. Meinert Landscaping, Inc.

BEFORE: COLINS, President Judge, SIMPSON, Judge, JIULIANTE, Senior Judge.

OPINION BY JUDGE SIMPSON.

Frank and Michelle Domeisen and other neighboring property owners (Individual Neighbors) appeal an order of the Court of Common Pleas of Allegheny County (trial court) affirming the decision of the Zoning Hearing Board of O'Hara Township (Board) granting a special exception and

related variances to John A. Meinert Landscaping, Inc. (Applicant) for the relocation and expansion of its landscaping and retail sales business. We affirm, except as to a sign variance, for which we vacate and remand.

Applicant is a family owned landscaping business, operating on a 12–acre lot (Subject Property) in O'Hara Township for approximately 50 years. The O'Hara Township Zoning Ordinance (Ordinance) was enacted in 1965. The area in which the Subject Property is situated was zoned R–2 suburban residential in accordance with the Ordinance. In 1966, the Subject Property was granted nonconforming status by filing a document known as a "Certificate of Occupancy." Pursuant to that document, the scope of the non-conforming use was "[a]gricultural (farming) and Landscaping Contractors with equipment pertinent thereto, *Nursery Stock, retail and wholesale selling, and equipment and supplies retail and wholesale sales.*" (Emphasis added.) Reproduced Record at 1.

Over the years, Applicant continued its retail sale of nursery stock. In 1993, Applicant received a variance to replace an existing business sign on the property. In that matter, the Board concluded that the Applicant conducted an agricultural, landscaping, nursery and hydroseeding business on the Subject Property and those uses predated the 1965 ordinance. The Subject Property is currently improved

with buildings covering approximately 1.8% of the land.

In September 2000, Applicant applied for a special exception to expand the preexisting non-conforming use pursuant to Section 72–16.12 of the Ordinance,[1] and other related variances (Proposal I). Proposal I contemplated a 300% increase of floor area, significantly beyond the 25% Ordinance limitation. The Board rejected the application, but stated "some expansion more in line with the requirements contained in the ordinance would be appropriate and would permit [Applicant] to continue his business and to expand his business and to keep it viable." Board Op., November 2000, Finding of Fact No. 13.

In December 2000, Applicant submitted a new proposal (Proposal II) to the Board. Proposal II requested a floor area increase of 129%. The Applicant's new proposal results in a 2.4% increase in building coverage.

Thereafter, the Board held two hearings. Individual Neighbors presented evidence that Proposal II's costs of construction, floor area and assessed value violate the Ordinance. In response, Applicant and its design expert, Robert Hayter, testified that Proposal II was downsized from Proposal I. Hayter opined any further reduction in the size of the proposed facilities would not be sufficient to keep the business viable. Transcript of January 8, 2001, hearing before the Board at 38. Ap-

---

1. Section 72–16.12 of the Ordinance provides, in relevant part:

 E. A nonconforming use may be expanded, extended or enlarged only upon receiving a special exception approval from the Zoning Hearing Board. The following standards shall apply to the special exception request.
 2. No expansion, extension, or enlargement may exceed 25% of any of the following: floor area; lot coverage; building volume; sales volume. The said 25% is an

aggregate number, and all expansions since the nonconforming use became nonconforming will be considered. In addition, the cost of expansion, extension or enlargement may not exceed 50% of the assessed value of the property in question (or the fair market value of the property, if exempt).
 3. All other requirements of the Ordinance must be met, including required parking, attributable to the expansion, extension or enlargement.

plicant stated marketing studies indicated neither the wholesale nor retail portion of the business could stand alone. *Id.* at 59–62. He testified that in order for the business to remain competitive and to grow, he needed more enclosed sales area for viewing nursery stock. *Id.* at 32, 67.

The Board granted the special exception and six related variances.[2] It determined that the property could not be expanded within the limits of the Ordinance and that the proposed expansion would permit Applicant to carry on its business while maintaining the right of the Township to limit future expansion. The Board accepted Hayter's testimony as uncontroverted, persuasive and compelling. Based upon his testimony, the Board found that the expansion would be in keeping with the nature and character of the community and the goals of the Ordinance. The Board noted the Subject Property has a severe grade sloping back toward the proposed storage area. Topographically, it has a small flat area or shelf on one border. Because of the unique physical characteristics of the Subject Property, its proposal was the most efficient manner to allow Applicant's business to expand and survive. Further, the Board found Proposal II constituted a substantial change from the original proposal.

Individual Neighbors appealed. The trial court received no additional evidence and affirmed the Board. In particular, the trial court held Proposal II was a

natural expansion of the nonconforming use. Individual Neighbors now appeal to this Court, raising six issues.[3]

I.

Individual Neighbors first contend Applicant's proposed expansion is beyond the doctrine of natural expansion because the proposed use is not sufficiently similar to the pre-existing use. Specifically, they argue Applicant is seeking to significantly expand its retail sale of plants, shrubs and other landscaping surplus which was never more than an incidental use to Applicant's landscaping business. Individual Neighbors assert that Applicant is now seeking to convert the Subject Property into a "garden center." Moreover, Individual Neighbors submit that the record does not support the Board's conclusion that Applicant has used the Subject Property for retail nursery sales.

There is substantial evidence in the record from which the Board could conclude that Applicant conducted retail nursery sales on the Subject Property for over 50 years, and that the retail sales were more than incidental to the landscaping business.

The Township's documents dating from 1966 demonstrate that Applicant was granted nonconforming status to operate a retail and wholesale landscaping business. This evidence, coupled with the testimony from Applicant and Frank Marsico, a former employee of Applicant, that Applicant

2. The Board granted a variance from Section 72–16.120 with regard to the limitations of lot coverage, building volume and square footage and 50% assessed value limitation. It also granted a variance from Section 72–15.117 with regard to the relocation of the existing sign and a variance from Section 72–104.J with regard to the number of required parking spaces.

3. Where, as here, the trial court hears no additional evidence, our review is limited to a determination of whether the board committed an error of law or an abuse of discretion. *Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment,* 804 A.2d 116 (Pa. Cmwlth.2002). A zoning hearing board abuses its discretion when its factual findings are unsupported by substantial evidence. *Valley View Civic Ass'n v. Zoning Bd. of Adjustment,* 501 Pa. 550, 462 A.2d 637 (1983).

made sales to the general public supports the Board's finding that Applicant conducted retail sales. Transcript of Zoning Hearing Board Meeting, September 11, 2000, testimony of Patrick Meinart at 18, 32, 130; testimony of Frank Marsico at 117.[4]

■■■ A preexisiting nonconforming use creates a vested property right in the owner of the property. Accordingly, "[t]he right to expand a nonconforming use to provide for the natural expansion and accommodation of increased trade is a constitutional right protected by the due process clause." *Jenkintown Towing Service v. Zoning Hearing Bd.*, 67 Pa.Cmwlth. 183, 446 A.2d 716, 718 (1982), (quoting *Silver v. Zoning Bd. of Adjustment*, 435 Pa. 99, 102, 255 A.2d 506, 507 (1969)). Limitations on this right occur when the expansion is inconsistent with the public interest, where the proposed expansion is in actuality not an expansion of the old use, but the addition of a new use, or in order to prevent excessive expansion. *Whitpain Township Bd. of Supervisors v. Whitpain Township Zoning Hearing Bd.*, 121 Pa.Cmwlth. 418, 550 A.2d 1355 (1988). Moreover, the fact that an expansion is sizeable does not make it unreasonable *per se. Whitpain Township.*

Addressing whether a use qualifies as a continuation of an existing, nonconforming use, our Supreme Court held that the proposed use need not be identical to the current use, but must be sufficiently similar to the nonconforming use as not to constitute a new or different use. *Limley v. Zoning Hearing Bd.*, 533 Pa. 340, 625 A.2d 54 (1993); *accord Austin v. Zoning Hearing Bd.*, 91 Pa.Cmwlth. 356, 496 A.2d 1367 (1985).

In *Limley*, the Supreme Court held that a proposed public restaurant and bar was a natural expansion of the existing nonconforming use as a nonprofit private social club. The Court determined that the chief activity of the social club was the sale of food and beverages and that activity would remain the same with the proposed restaurant. It also found that the proposed establishment would serve the same type of patron base. *See also Pappas v. Zoning Bd. of Adjustment*, 527 Pa. 149, 589 A.2d 675 (1991) (expansion of a pizza restaurant with seating for 40 customers was similar to existing use as a sandwich shop with limited customer seating and selling mainly take-out food).

This Court looked to the use of the property in *Austin* to conclude that a proposed expansion of a farm stand into a delicatessen constituted a new and different use. In that case, the property owners operated a farm stand to sell products grown on their own property and products made from products grown on their property, such as apple cider. They filed an application with a local zoning board to expand their lawful nonconforming use to include the sale of delicatessen items of cold cuts, specialty cheeses, baked goods and wine. The Court stated that the property owners' proposal "to conduct an establishment quite different from their roadside stand where only farm products grown on the property or produced from those grown on the property" constituted a new and different use. *Austin*, 496 A.2d at 1370. Accordingly, we held that the proposed use was not protected under the doctrine of the natural expansion of an existing nonconforming use.

---

4. We note that neighbors who argued that retail sales were not conducted on the property, acknowledged that they made seasonal retail purchases from Applicant of trees and wreaths. Transcript of Zoning Hearing Board Meeting, September 11, 2000, testimony of Michelle Domeisen at 90, 98; testimony of Judy Dobson at 101.

■ Proposal II does not change the preexisting nonconforming nursery sales part of the business; rather, Proposal II permits its expansion. The extent of expansion is consistent with that identified by Hayter as being the minimum necessary to keep the business viable within the evolving nursery market. While the display nursery stock is changing, the use is not.

■ Also, the Board accepted the testimony of Hayter, who opined that expansion of the retail part of the business was necessary to blend the landscaping business with the nursery sales in order to insure the survival of the business. Board Op., February 2001, Finding of Fact No. 15. Among other things, the doctrine of natural expansion protects a change in the business mix among preexisting components. *See Limley.*

Further, the expansion is not excessive, but is the minimum necessary to support the business. In *Whitpain Township,* Wings Field Associates sought to expand an airport by 429% over the square footage of the structures on the property in 1950. This Court found no merit in the township's argument that because the expansion was sizeable, it was unreasonable. Likewise, we find no merit in Individual Neighbors same argument here. By placing conditions upon the approval, the Board properly balanced the interests of the general public regarding excessive expansion against the rights of the business person to accommodate business needs and reasonable use of property. Those conditions limit hours of operation, require low growing shrubs so as not to impair sight distance along the adjacent road, and require the development of a soil erosion and sedimentation plan and storm water management plan acceptable to the Township.

Accordingly, the Board properly concluded that the proposed expansion of the nonconforming use for the accommodation of increased trade was protected.

## II.

Individual Neighbors next assert the Board erred by failing to make findings concerning Applicant's compliance with the Ordinance's special exception requirements. Specifically, they contend the Board failed to find the proposed expansion complied with these criteria: (1) lot coverage; (2) floor area; (3) building volume; (4) sales volume; and (5) parking.

This argument lacks merit. In addition to seeking a special exception to permit expansion of the nonconforming use, Applicant applied for related variances from the other special exception requirements. The Board granted these variances. Therefore, the Board adequately addressed these requirements.

## III.

Individual Neighbors also assert the Board erred by granting these ancillary variances because Applicant did not prove an unnecessary hardship or unique circumstances of the Subject Property. They contend the only hardships asserted are the addition of the retail sales operation and the size and depth of the proposed construction.

■ There is an important line of cases discussing how variance standards are to be applied to nonconforming uses. There are four factors that must be proven to obtain such a variance: (1) that an unnecessary hardship exists which is not created by the party seeking the variance and which is caused by unique physical circumstances of the property for which the variance is sought; (2) that a variance is needed to enable the party's reasonable use of

the property; (3) that the variance will not alter the essential character of the district or neighborhood, or substantially or permanently impair the use or development of the adjacent property such that it is detrimental to the public's welfare; and (4) that the variance will afford the least intrusive solution. *Larsen v. Zoning Bd. of Adjustment,* 543 Pa. 415, 672 A.2d 286 (1996).

### A.

First, the Ordinance must impose an unnecessary hardship on the Subject Property. In *Jenkintown Towing,* this Court observed "our analysis ... requires a finding that, in the face of ordinance restrictions, the expansion or modernization ... *must be a matter of necessity for the business rather than merely to take advantage of an increase in business.*" (Emphasis added). *Jenkintown Towing,* 446 A.2d at 724. Based upon Applicant's expert testimony, the Board here found the proposal, as a whole, is the minimum required for Applicant's business to remain financially viable.[5]

### B.

Second, the hardship must result from the unique physical characteristics of the property. The *Jenkintown Towing* court noted "[t]he nonconforming use variance decisions have uniformly assumed, with little or no discussion, the existence of 'unique physical ... conditions,' necessarily indicating that the pre-existing nonconforming use itself constitutes the physical 'circumstances' which, apart from other lot or land characteristics, make the property uniquely different from others in the dis-

trict." *Id.* at 720. Thus, Applicant satisfies the uniqueness requirement in part by the preexisting nonconforming use itself. In addition, the Board found the unique physical characteristics of the Subject Property hindered other solutions.

### C.

Third, the variance must not be detrimental to public welfare. The Board found that the road upon which the Subject Property sits is a busy state highway with severe curves and that a nearby church and school generate traffic. The Board did not, however, make any findings that the proposed expansion would be detrimental. With the conditions placed upon Applicant, especially those preserving sight distances, the Board appropriately determined that any effect on the community would be minimal. We will not disturb the Board's finding of fact, which is supported by the record.

### D.

Fourth, the hardship must not be self-inflicted. In this regard, the court in *Jenkintown Towing* stated, "[a] lawful nonconforming use ... does not invoke this subsection, unless a landowner knowingly takes subsequent action to place obstacles in the way of expansion." Id. at 722. This requirement is not applicable here.

### E.

Finally, the variance sought must be the minimum that would afford relief. Here, the Board found that Applicant's proposal is the minimum necessary to permit the business to survive and that it

---

5. Where a trial court takes no additional evidence, questions of credibility and evidentiary weight are solely within the province of the zoning board as fact finder. *Muse v. Zoning Hearing Bd.,* 52 Pa.Cmwlth. 287, 415 A.2d 1255 (1980). The Board is free to accept or reject, in whole or part, the testimony of any witness. *Graham v. Zoning Hearing Bd.,* 99 Pa.Cmwlth. 585, 514 A.2d 236 (1986).

will not alter the character of the community. And, "[b]ecause of the physical circumstances of the property, the expansion of the nonconforming use is best accomplished in the location and manner as proposed by the applicant." Board Op., February 2001, Finding of Fact No. 18. Accordingly, we find no error in the Board granting the ancillary variances.

## IV.

Individual neighbors next assert the Board erred by invalidating the "sales volume" provision of the Ordinance. This refers to Conclusion of Law No. 6, which states:

> The Board finds as a matter of law that the sales volume limitation contained in the zoning ordinance would be contrary to the constitutional requirements contained in various cases which constitute the law of the Commonwealth. The inflation since the property was registered as a nonconforming use, i.e. 1966 reflects an increase in the [Consumer Price Index] of approximately 300%. To limit the applicant to the numbers stated in the ordinance would strangle its business.

Board Op., February 2001, Conclusion of Law 6.

Here, the Board properly concluded that Applicant had a lawful, preexisting, nonconforming use. This lawful use created for Applicant a concomitant right to develop and to continue its business by adapting to changing market conditions, notwithstanding the technical requirements of the zoning code. Contrary to Individual Neighbors' contention, the Board did not declare the "sales volume" limitation unconstitutional. Rather, it concluded that Applicant could not develop his business in strict conformance with the zoning requirement. If it did not grant Applicant a variance from this restriction, the limitation would "strangle" Applicant's constitutionally protected right to develop its business.

## V.

Individual Neighbors also contend that Applicant's second application is precluded because there is no evidence of changed circumstances in the two-month period between applications.

■■■■■ The doctrine of claim preclusion is applied sparingly in zoning matters because the need for flexibility outweighs the risk of repetitive litigation. *Stoneback v. Zoning Hearing Bd.*, 699 A.2d 824 (Pa. Cmwlth.1997). The doctrine becomes operative if there exists the concurrence of four elements: (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of the persons and parties to the action, and (4) identity of the quality in the persons for or against whom the claim is made. *City of Pittsburgh v. Zoning Bd. of Adjustment*, 522 Pa. 44, 559 A.2d 896 (1989). An order of a court affirming a decision by a zoning hearing board refusing the variance does not preclude a grant for a variance for the same property if there has been a subsequent substantial change in conditions incident to the land itself. *Id.*, citing *Filanowski v. Zoning Bd. of Adjustment*, 439 Pa. 360, 266 A.2d 670 (1970).

■■■■ It is beyond reasonable dispute that Proposal I and Proposal II differ substantially. Proposal I planned a 300% increase in floor area, whereas Proposal II proposes a 129% increase. Moreover, the Board invited a second and different application in its decision denying Proposal I. The Board advised Applicant that "some expansion more in line with the requirements contained in the ordinance would be appropriate. . . ." Board Op., November 2000, Finding of Fact No. 13.

The significant changes between Proposal I and Proposal II are sufficient to support a conclusion that there is a minimal identity as to the cause of action. Therefore, the doctrine of claim preclusion is inapplicable. *See e.g., Township of Harrison v. Smith,* 161 Pa.Cmwlth. 166, 636 A.2d 288 (1993) (claim preclusion does not bar second variance application where application contains a 50% reduction in building space from first application); *City of Pittsburgh* (claim preclusion does not bar second application which cures parking and walkway deficiencies of the first application). Here, claim preclusion does not bar a second application for a variance involving the same property where the applicant demonstrates that the proposals are substantially different.

## VI.

As a final issue, Individual Neighbors claim the Board erred by granting variances from the parking and sign requirements because Applicant failed to prove unnecessary hardship.

### A.

 The Board granted a variance from the 116 parking spaces required by the Ordinance. It explained that "a reduction in the number of parking spaces would reduce traffic and therefore this Board finds that the necessary number to keep the business viable is 68." Board Op., February 2001, Conclusion of Law No. 8. The purpose for the parking variance was two-fold. First, because of the multiple uses on the property, there were several different ordinance requirements for parking.[6] The Board recognized that strict compliance with all the parking requirements would be unreasonable. Tran-

script of Zoning Hearing Board Meeting, January 8, 2001, statement of Board member Russell Orkin at 63. Second, Applicant's expert testified that the property would not support a parking area of the size required because of the unique physical circumstances of the property. The Board found this opinion credible. This supports the Board's conclusion that Applicant met the necessary hardship burden.

### B.

 With regard to the sign variance, however, we find error in the Board's decision. Section 72–15.117 of the Ordinance provides that a legal nonconforming sign may not be moved or replaced except to bring the sign into complete conformity with the ordinance. The Board failed to make any findings or to explain its rationale for granting a variance to permit relocation of the existing business sign.

 A zoning board has a duty to make essential findings of fact sufficient to support its conclusions. In the absence of such findings, the court may remand the matter to the board so that it can fulfill that duty. *Jenkintown Towing.* As the learned Judge Mencer stated in *Lando v. Springettsbury Township Zoning Bd. of Adjustment,* 4 Pa.Cmwlth. 312, 286 A.2d 924, 927 (1972), to remand the case for correction of the Board's error "rests in the discretion of the court, the major considerations being the extent of the error and the effect on the parties of the delay attendant on a remand."

The extent of the Board's error granting the sign variance without supportive findings of fact requires us to remand this part of the Board's decision with the directive that the Board make findings on this issue. In all other respects, the orders of the trial court, and of the Board, are affirmed.

---

6. Section 72–104.J required minimum parking for each square footage of property used for offices, retail stores selling flowers, ware-house storage, nursery and greenhouses. The total number of parking spaces required under all applicable ordinances was 116 spaces.

## ORDER

AND NOW, this 10th day of January, 2003, the decision of the Court of Common Pleas of Allegheny County is affirmed in all respects, except as to affirmance of the Zoning Hearing Board of O'Hara Township's grant of a special variance to John A. Meinert Landscaping, Inc. for relocation of its business sign.

We vacate and remand that portion of the decision relating to the sign variance to the Court of Common Pleas of Allegheny County with directions to remand the matter to the Zoning Board of O'Hara Township to make findings of fact and conclusions of law as to whether John A. Meinert Landscaping, Inc. is entitled to a variance from § 72–15.117 of the Zoning Ordinance of O'Hara Township for relocation of its business sign.

Jurisdiction relinquished.