**Mary E. SCHADT, Appellant**

v.

**CITY OF BETHLEHEM ZONING HEARING BOARD.**

Commonwealth Court of Pennsylvania.

Argued March 9, 2015.

Decided June 26, 2015.

---

James F. Preston, Bethlehem, for appellant.

Erich J. Schock, Center Valley, for appellee.

BEFORE: RENÉE COHN JUBELIRER, Judge, MARY HANNAH LEAVITT, Judge, ROCHELLE S. FRIEDMAN, Senior Judge.

OPINION BY Judge MARY HANNAH LEAVITT.[1]

Mary E. Schadt (Applicant) appeals an order of the Court of Common Pleas of Northampton County (trial court) denying her request for zoning relief. The trial court affirmed the decision of the City of Bethlehem Zoning Hearing Board (Zoning Board) holding, *inter alia*, that Applicant failed to demonstrate the requisite hardship for a use variance to convert her

1. This case was reassigned to the authoring judge on May 5, 2015.

home into a suite of professional offices. We affirm.

Applicant's property is located on the corner of West Market and New Streets in the City of Bethlehem's RT High Density Residential District[2] and North Side Historic District. There are three detached buildings on the property. The property's centerpiece is a 164–year old three-story single-family dwelling that fronts on West Market Street. Behind the home is a detached garage with a vacant apartment above. At a right angle to the house, two small, one-story, book shops are located in a single building along New Street. An apartment has been constructed above one shop, but it is vacant. The book shops, constructed of wood, are connected to each other but not to the house. Shops are not allowed in the RT High Density Residential District, but those on the subject property predate the zoning ordinance and are lawfully non-conforming. The house is a high-value property where Applicant's family has lived for 40 years.

Applicant[3] applied for a variance under Section 1325.06 of the City's Zoning Ordinance to convert the existing single-family dwelling into a financial services office, which is a commercial use not permitted in the RT High Density Residential District.[4] At a hearing before the Zoning Board, Applicant testified that the financial services office would have eight employees, all of whom would park off site. No retail services would be conducted on the premises, and only two to three clients would visit the office per week. Office hours would be from 8:30 a.m. to 4:30 p.m., Monday through Friday. Applicant testified that no changes would be made to the exterior of the building, any renovations would comply with applicable Historic District guidelines, and signage would be limited to a single address plate.

The surrounding neighborhood contains a mix of residential and commercial uses. On the same block as the property are two single-family dwellings, a four-unit apartment building, a two-unit apartment building, a law office, and a financial planner's office. The building directly across New Street from the property contains three businesses. Also nearby are two Moravian Academy sites, a cemetery, commercial space, single and multiple-family dwellings, and law offices.

Applicant's real estate agent testified that the property is atypical because it contains both commercial and residential uses. The combined square footage of the three buildings is 10,000 square feet. The house has a small back yard, no setbacks, and is on a busy corner. Applicant listed the property for sale in May 2013 and had 19 showings, but the presence of the apartments and retail shops presented a challenge; buyers who were interested in the residence were not interested in the commercial and apartment uses and vice versa.

---

2. The RT High Density Residential District was created "[t]o provide for higher density residential neighborhoods with a mix of housing types." ZONING ORDINANCE OF THE CITY OF BETHLEHEM, § 1303.07(e) (effective June 15, 2012, amended to September 17, 2013) (Zoning Ordinance).

3. Applicant is the owner of the property. In 2013, she listed the property for sale and ultimately entered into an agreement of sale with Morning Star Partners, LLC. Morning Star, as equitable owner of the property, was the applicant before the Zoning Board. For purposes of this appeal, Morning Star has assigned its rights and interest to Applicant.

4. Applicant also requested a special exception under Section 1304.4 of the Zoning Ordinance, entitled "Reuse of Corner Commercial Uses Allowed in the RT and RG Districts." The Zoning Board denied Applicant's request and she does not challenge that ruling on appeal.

Potential buyers also could not obtain residential financing to acquire the property. One potential buyer required owner financing, which was not feasible for Applicant. In August 2013, after four months on the market, Applicant reached an agreement of sale with Morning Star.

The Zoning Board concluded that Applicant failed to demonstrate that a physical condition of the property prevents its use in conformance with the Zoning Ordinance and that the variance she requested was the minimum relief necessary. Accordingly, the Zoning Board held that Applicant failed to establish the requisite hardship for a use variance and denied her request for such relief. Applicant appealed to the trial court, which affirmed. The present appeal followed.

 On appeal,[5] Applicant argues that the Zoning Board erred in determining that she was not entitled to a use variance. Specifically, Applicant contends that the presence of non-conforming commercial uses on the property is itself a unique physical condition which, in combination with the zoning regulations, creates an unnecessary hardship. We disagree.

 An applicant for a variance must establish all of the following elements:

(1) an unnecessary hardship will result if the variance is denied, due to the unique physical circumstances or conditions of the property; (2) because of such physical circumstances or conditions the property cannot be developed in strict conformity with the provisions of the zoning ordinance and a variance is necessary to enable the reasonable use of the proper-

ty; (3) the hardship is not self-inflicted; (4) granting the variance will not alter the essential character of the neighborhood nor be detrimental to the public welfare; and (5) the variance sought is the minimum variance that will afford relief.

*Taliaferro v. Darby Township Zoning Hearing Board,* 873 A.2d 807, 811–12 (Pa. Cmwlth.2005).[6]

 This Court may not substitute its judgment on the merits for that of a zoning board whose decision "was within the bounds of reason and therefore represented a sound exercise of discretion." *Marshall v. City of Philadelphia,* 626 Pa. 385, 97 A.3d 323, 334 (2014). An applicant is not required to show that the property is valueless without the variance, but she must show more than "mere economic hardship." *Id.* at 330. This is particularly true where "a variance is sought in order to make a change from an existing use consistent with the zoning code to an inconsistent use." *Id.* In assessing the evidence, "[i]t is the function of the zoning board to determine whether the evidence satisfies the criteria for granting a variance. The zoning board, as fact-finder, is the sole judge of credibility." *Id.* at 331 (internal citations omitted).

We agree with the Zoning Board that Applicant's evidence did not establish an unnecessary hardship. Applicant and her family have used the historic single-family home as their residence for 40 years. The home has been used by other families for this purpose for over a century. This history belies the claim that the property cannot be used without a variance. Fur-

---

5. Where the trial court takes no additional evidence, this Court must determine whether the Zoning Board committed an error of law or abused its discretion. *Valley View Civic Association v. Zoning Board of Adjustment,* 501 Pa. 550, 462 A.2d 637, 639 (1983).

6. The requirements for a variance in Section 1325.06 of the Zoning Ordinance are the same as those recited in *Taliaferro,* 873 A.2d at 811–12. *See* Zoning Board Decision at 7–8.

ther, an inability to sell the property in less than four months does not represent a hardship that would justify a variance. At most it is a "mere economic hardship." *Id.* at 332. In fact, Applicant did receive an offer that would continue the residential use but required owner financing. Although owner financing may not have been feasible for Applicant, the offer demonstrates a *bona fide* interest in the property as is. The next offer may be more attractive.

We disagree with Applicant's contention that the presence of the nonconforming book shops on the property constitutes a unique physical condition that, by definition, prevents the use of the property in conformance with the Zoning Ordinance. The cases cited by Applicant for that principle concerned the natural expansion of a lawful nonconforming use, which is a constitutionally protected vested property right that is simply not present here. Notably, in one of those cases, *Domeisen v. Zoning Hearing Board of O'Hara Township*, 814 A.2d 851 (Pa.Cmwlth.2003), this Court emphasized that an owner's vested property right to expand a non-conforming use is limited "where the proposed expansion is in actuality not an expansion of the old use, but the addition of a new use." *Id.* at 856. That is precisely the situation presented here. Applicant does not seek to expand the existing non-conforming use of two small bookstores but, rather, to create an entirely new non-conforming use,

*i.e.,* an office. Here, the trial court aptly noted that Applicant is not "entitled to make the property *more* nonconforming by virtue of the existing non-conformance." Trial Ct. op. at 7.[7]

The fact that the buyer does not intend to change the exterior of the home is also of no moment.[8] Historic preservation should not be confused with land use. The City of Bethlehem has made the decision to make the neighborhood residential.

Before the Zoning Board, neighbors testified that they invested in this neighborhood of historic homes with the expectation that the Zoning Ordinance will be enforced. In voicing her opposition to the variance, one neighbor noted that Applicant's proposed use would be a significant departure from other nonconforming uses, which usually involve an office within a residence akin to a home occupation. The neighbor also explained:

> Before we moved here—until about three years ago we had a cottage out of town in a little town in New England. And we were one of a zone like this where there were businesses and there were residences. One by one, the houses became businesses, to the point that we were the only people there anymore. And at night—I mean, it was busy during the day, and then at night we were the only people there. And it changes everything.

---

7. We also reject Applicant's suggestion that "[t]he Property cannot be subdivided because the Ordinance regulations prohibit it." Appellant's Brief at 15. Applicant's lot can be subdivided with appropriate zoning relief. The trial court suggested that Applicant did not explore subdividing the property, which would not have required a use variance, because it would be less lucrative. Trial Ct. op. at 8, n.3. A subdivision may be the option that will require the minimum zoning relief necessary since the non-conforming retail uses are

being conducted in buildings that are separate and detached from the conforming single-family residence.

8. As was noted at the hearing before the Zoning Board, changes to the building will likely be required in order to comply with the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12101–12213, and other safety regulations. Reproduced Record at 47a–49a (R.R. ——).

R.R. 122a. Yet another neighbor spoke with eloquence on the need to uphold the RT–Residential District as residential:

> My husband and I made a decision, we moved here three years ago. It took us a year, over a year, I guess, to find a house that was right for our family. We were committed to preserving a home in the Historic District. Because from the time we moved to the Lehigh Valley twenty years ago, we fell in love with downtown Bethlehem and wanted to be here. And it was a dream, and three years ago became a dream come true.
>
> * * *
>
> I take exception to what [Applicant's real estate agent] said about a hardship, because the home was only on the market three to four months, whatever it was. There are definitely people out there.

R.R. 134a.

In summary, the Zoning Board did not err in concluding that Applicant failed to establish the unnecessary hardship required for a use variance to convert her residential home to a commercial use. Accordingly, we affirm the trial court's order.

## ORDER

AND NOW, this 26th day of June, 2015 the order of the Court of Common Pleas of Northampton County in the above-captioned matter, dated May 20, 2014, is hereby AFFIRMED.

DISSENTING OPINION BY Senior Judge ROCHELLE S. FRIEDMAN.

Because I would conclude that Applicant proved an unnecessary hardship, I would reverse and remand to the trial court for remand to the Zoning Board to address the remaining criteria for Applicant's requested use variance, and, if necessary, to address Applicant's dimensional variance. Accordingly, I respectfully dissent.

The property's use for both commercial and residential purposes is a lawful, nonconforming use. A nonconforming use is a physical circumstance that " 'make[s] the property uniquely different from others in the district.' " *Domeisen v. Zoning Hearing Board of O'Hara Township,* 814 A.2d 851, 858 (Pa.Cmwlth.2003) (citation omitted).

As a matter of law, nonconformity constitutes a unique physical condition that, by definition, prevents the use of the property in conformance with the Zoning Ordinance. *See id.* The property, located in the RT High Density Residential District, is the only property in the City of Bethlehem that is both commercial and residential, containing a single-family dwelling, retail stores, a parking garage, and apartments. Although the present use of the subject building conforms to the Zoning Ordinance, the property as a whole has unique physical circumstances or conditions that prevent its use in conformance with the Zoning Ordinance, i.e., multiple conforming and nonconforming uses on a single lot. Therefore, the Zoning Board erred in concluding that Applicant failed to demonstrate unique physical circumstances or conditions of the property.

Further, I believe the Zoning Board erred in concluding that Applicant failed to prove an unnecessary hardship due to unique physical circumstances. The record reveals that Applicant has had difficulty selling the property because prospective buyers either want a commercial use or a residential use, not both. Also, due to the multiple uses, prospective buyers have had difficulty obtaining financing. The current offer on the property is contingent upon Applicant obtaining a variance to change the use of the subject building. There have been no firm offers on the property

in its current multi-use, multi-building state.

The property contains residential· uses that severely limit the property's usefulness to a commercial buyer and commercial uses that severely limit its usefulness to a residential buyer. The property cannot be subdivided without zoning relief. Consequently, the unique physical circumstance of multiple conforming and nonconforming uses on a single lot, which cannot be subdivided, creates an unnecessary hardship. The hardship is not self-inflicted but results from regulations in the Zoning Ordinance, which came into effect after the development of the property. Therefore, I believe that the Zoning Board erred in concluding that Applicant failed to meet her burden of proving an unnecessary hardship.

Moreover, after finding that Applicant failed to establish an unnecessary hardship due to the unique physical circumstances of the property, the Zoning Board did not address whether the variance requested is the minimum variance that will afford relief or any other issue[1]. Therefore, I would reverse and remand to the trial court to remand to the Zoning Board to address the remaining criteria for approval or denial of Applicant's use variance request, and, if necessary, to also address Applicant's dimensional variance request.

---

1. Under article 1325.06(b) of the Zoning Ordinance, before authorizing a variance, the Zoning Board must find that: (1) there are unique physical circumstances that create an unnecessary hardship; (2) there is no possibility that the property can be developed in strict conformity with the Zoning Ordinance and a variance is necessary to enable the reasonable use of the property; (3) the hardship was not created by the applicant; (4) the variance will not alter the essential character of the neighborhood, substantially or permanently impair the appropriate use or development of the property, or be detrimental to the public welfare; and (5) the variance will represent the minimum variance that will afford relief.