# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Russell Berner and Donna Berner, | : | |
| Kendall Dobbins, Nathan Roberts, | : | |
| Roberts Realty, LLC, Robert D. | : | |
| Clark, and Robert W. Webber, | : | |
| Appellants | : | |
| | : | |
| v. | : | No. 881 C.D. 2015 |
| | : | Submitted: December 11, 2015 |
| Montour Township Zoning | : | |
| Hearing Board and Scott Sponenberg | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
                     HONORABLE ANNE E. COVEY, Judge
                     HONORABLE ROCHELLE S. FRIEDMAN, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                          **FILED: February 8, 2016**

In this zoning appeal, Objectors[1] ask whether the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) (trial court) erred in affirming a decision of the Montour Township Zoning Hearing Board (Board) that granted Scott Sponenberg's (Applicant) special exception application for a proposed swine nursery, subject to conditions. Objectors argue the ZHB erred in: (1) failing to decide whether there was a conflict between the Nutrient Management Act (NMA), 3 Pa. C.S. §§501-522, and the Montour Township Zoning Ordinance (zoning ordinance) that required preemption of the zoning ordinance; (2) determining Applicant presented substantial evidence to satisfy the

---

[1] Objectors are Russell and Donna Berner, Kendall Dobbins, Nathan Roberts, Roberts Realty, LLC and Robert D. Clark and Robert W. Webber.

zoning ordinance's objective criteria for a special exception; and, (3) capriciously disregarding competent evidence of the unsuitability of the soil for application of manure and the condition of a local road that abuts a portion of Applicant's property. Upon review, we vacate and remand.

## I. Background

Applicant owns the property located at 140 Tower Drive (property) in Montour Township (Township), Columbia County. The property lies in an agricultural zoning district.

In April 2013, Applicant filed an application for a special exception with the ZHB for his proposed intensive agricultural use. Specifically, Applicant seeks to construct a 78½ foot by 201 foot swine nursery barn with under building concrete manure storage with a usable capacity of approximately 645,000 gallons. Applicant's special exception application included a completed application form, detailed site plans prepared by TeamAg, Applicant's consultant, a Manure Management Plan prepared by Todd Rush of TeamAg, who is a state certified nutrient management specialist, correspondence from Rush, and the Pennsylvania Department of Environmental Protection's (DEP) Manure Management Plan Guidance document. A hearing ensued before the ZHB at which Applicant and Rush testified.[2]

---

[2] In July 2015, this Court upheld a decision of the Montour Township Board of Supervisors that approved, subject to conditions, Applicant's land development application and plan. See Berner v. Montour Twp., 120 A.3d 433 (Pa. Cmwlth. 2015) (Simpson, J.).

After the hearing, the ZHB issued a decision in which it granted Applicant's special exception application subject to two conditions. Objectors appealed to the trial court. Ultimately, the trial court determined public notice of the ZHB hearing was deficient. Thus, the trial court remanded to the ZHB for the purpose of taking additional testimony from any person who was not present at the ZHB hearing, after proper public notice of the new hearing was provided.

On remand, the ZHB held two hearings at which it heard testimony from several Objectors, Dennis R. Peters, P.E. of Peters Consultants regarding the condition of Tower Road, Brian Oram, a professional geologist and soil scientist, and Rush concerning manure application.

After the remand hearings, the ZHB unanimously reaffirmed its prior decision granting Applicant's special exception application subject to two conditions. In a written opinion in support of its decision, the ZHB made the following findings and conclusions.

The property is currently used as a livestock and crop farm. It is improved with a farm house, a cattle barn, two equipment sheds and several out buildings. The proposed swine nursery would include a swine nursery barn with under building manure storage. The manure from the swine nursery will be spread on portions of the property and on other leased fields as indicated in the Manure Management Plan included with the application.

Rush prepared the Manure Management Plan and provided testimony detailing the proposed use and its compliance with applicable state and federal statutes and regulations.

Section 402(1)(E) of the zoning ordinance provides that "Intensive Agriculture and Agricultural Support," which specifically includes hog raising, is permitted by special exception in an agricultural district. The ZHB concluded Applicant's proposed swine nursery qualifies as an Intensive Agriculture and Agricultural Support use as defined by the zoning ordinance.

Further, Section 402(1)(E) of the zoning ordinance sets forth seven specific criteria that an Intensive Agriculture use must satisfy. The ZHB concluded Applicant satisfied each of these criteria through his application, exhibits and testimony. Additionally, Section 1101(3) of the zoning ordinance sets forth six general criteria for the granting of a special exception. The ZHB concluded Applicant satisfied each of those general criteria through his application, exhibits and testimony.

Objectors presented the testimony of neighboring property owners, Dennis Peters and Brian Oram. Objectors raised concerns about the proposed use regarding odor, manure application, potential contamination of groundwater, disease, traffic and diminution in property value.

Peters, a professional engineer, testified regarding the increased truck traffic on Tower Road from the proposed use and its impact on the condition of

4

Tower Road.  On cross-examination, Peters acknowledged he had not consulted with the Township regarding its upcoming scheduled road repairs and maintenance for Tower Road.  Further, on cross-examination, it was revealed that Peters used incorrect finish weight data for the hogs from the proposed nursery for his truck calculations resulting in incorrect and overstated truck traffic calculations.  The correct finish weight data was included in the application.

Oram, a soils scientist, presented testimony on the soil suitability of the property and the leased fields for land application of manure.  Oram concluded the soils on the property and the leased fields were not suitable for manure application from the proposed swine nursery based on the Natural Resources Conservation Service's (NRCS) Websoils Survey.

However, on cross-examination, it was revealed that Oram: (1) is not a state-certified nutrient management specialist; (2) did not conduct any soil or groundwater sampling on the property; (3) did not review Applicant's testimony or exhibits from the initial hearing regarding the proposed use; (4) did not reference or utilize the NRCS website's seasonal high water table data when forming his opinion regarding soil suitability; (5) did not consult with any NRCS representative in interpreting the information on the NRCS website; (6) did not consult with any representative of the State Conservation Commission in forming his opinion regarding soil suitability for manure application; (7) has only performed this type of soil analysis on one other occasion for a hog operation; and, (8) does not have a working knowledge of the NRCS' Code 590, which specifically concerns nutrient management and manure application.

The ZHB found credible the testimony presented by Applicant and Rush. Further, it found not credible certain aspects of the testimony presented by Peters and Oram, although it did not identify which parts of that testimony it discredited.

Ultimately, the ZHB concluded Applicant's proposed swine nursery qualified as an Intensive Agricultural and Agricultural Support use under the zoning ordinance. The ZHB further concluded Applicant met the zoning ordinance's objective criteria for such a use under Section 402(1)(E) of the zoning ordinance and the general requirements for a special exception under Section 1101(3) of the zoning ordinance. Thus, the ZHB determined, Applicant's special exception application was entitled to approval under those sections of the zoning ordinance, subject to conditions. Without explanation, the ZHB also concluded the preemption language in Section 519(b) of the NMA applied to Applicant's proposed use.

Based on these determinations, the ZHB granted Applicant's special exception request pursuant to Sections 402(1)(E) and 1101(3) of the zoning ordinance subject to two conditions.[3] Objectors again appealed to the trial court.

_____

[3] Specifically, the ZHB attached the following conditions: (1) Applicant shall secure the deceased animal disposal composting area so as to make the same inaccessible to scavengers; and, (2) Applicant shall produce an annual report in January 2015 and every year thereafter that certifies to the Township's Zoning Officer that Applicant's animal equivalent units do not meet or exceed the current level of 2.0 which would render Applicant ineligible for the current special exception and would place Applicant's use into the category of a Concentrated Animal Operation or a Concentrated Animal Feeding Operation.

Without taking additional evidence, the trial court issued an order denying Objectors' appeal. The trial court determined the ZHB did not commit an error of law or abuse of discretion in reaching its decision. Objectors appealed to this Court, and the trial court directed them to file a concise statement of the errors complained of on appeal pursuant to Pa. R.A.P. 1925(b), which they did.

The trial court subsequently issued a brief opinion pursuant to Pa. R.A.P. 1925(a) in which it explained its standard of review was limited to determining whether the ZHB committed an abuse of discretion or made an error of law. The trial court further explained that determinations of witness credibility are within the exclusive province of the ZHB. Here, the ZHB made very specific findings as to the credibility of the witnesses. Further, the ZHB's determinations were supported by substantial evidence. Thus, the trial court explained, it could find no error of law or abuse of discretion.

The trial court further explained the parties spent considerable time arguing over whether relevant portions of the zoning ordinance were preempted by state statutes, including: the NMA; the Clean Streams Law[4]; the statute commonly known as the Right to Farm Act[5]; and, the Domestic Animal Law.[6] The trial court explained it appeared the conditions the ZHB imposed on the approval of Applicant's special exception request were preempted by state law. However, it

---

[4] Act of June 22, 1937, P.L.1987, as amended, 35 P.S. §§691.1–691.1001.

[5] Act of June 10, 1982, P.L. 454, as amended, 3 P.S. §§951–957.

[6] 3 Pa. C.S. §§2301-2390.

was unnecessary to make such a determination because Applicant did not challenge the conditions. This matter is now before us for disposition.

## II. Issues

On appeal,[7] Objectors raise three issues. First, they contend the ZHB erred in failing to determine whether there was a conflict between the NMA and the zoning ordinance that required preemption of the zoning ordinance. Additionally, they maintain the ZHB erred in determining Applicant presented substantial evidence to satisfy the objective criteria for a special exception. Further, Objectors argue the ZHB capriciously disregarded competent evidence of the unsuitability of the soil for application of manure and the condition of Tower Road when it determined Applicant satisfied the special exception criteria in Section 402(1)(E) of the zoning ordinance.

## III. Discussion
### A. Preemption
#### 1. Contentions

Objectors first argue the ZHB concluded the NMA's preemption language applied to Applicant's proposed swine nursery use. They contend Section 519(b) of the NMA provides for preemption only where there is a conflict between the state law and the zoning ordinance. Objectors assert the ZHB erred in failing to identify any conflict between state law and the zoning ordinance. They argue there is no conflict between the regulations or guidance promulgated under

---

[7] Because the parties presented no additional evidence after the ZHB's decision, our review is limited to determining whether the ZHB committed an abuse of discretion or an error of law. Taliaferro v. Darby Twp. Zoning Hearing Bd., 873 A.2d 807 (Pa. Cmwlth. 2005).

the NMA and the provisions of the zoning ordinance pertaining to whether subsurface soils are unsuitable for the application of thousands of gallons of manure. Objectors contend they submitted substantial evidence of the unsuitability of the soils on the property, which the ZHB capriciously disregarded.

Applicant responds that the ZHB properly determined that the NMA preempts relevant provisions of the zoning ordinance. Applicant argues the NMA regulates the application of manure to soil to protect ground and surface water and preempts local ordinances that conflict with the NMA and its regulations. He asserts various regulations promulgated pursuant to the NMA set forth standards for manure application to soil and the minimum standards for design, construction, location, operation, and maintenance of manure storage facilities. Applicant contends the portion of the zoning ordinance requiring that facility designs for manure management must not cause "adverse impacts" on adjacent properties is more stringent than the NMA, in conflict with the NMA and its regulations, and is therefore preempted by the NMA.

### 2. Analysis

As to the issue of preemption, in Berner v. Montour Township, 120 A.3d 433 (Pa. Cmwlth. 2015) (Berner I), we explained:

> [T]he mere fact that the General Assembly has enacted legislation in a field does not lead to the presumption that the state has precluded all local enactments in that field; rather, the General Assembly must clearly evidence its intent to preempt. Such clarity is mandated because of the severity of the consequences of a determination of preemption: If the General Assembly has preempted a field, the state has retained all

9

regulatory and legislative power for itself and no local legislation in that area is permitted. …

There are three generally recognized types of preemption: (1) express or explicit preemption, where the statute includes a preemption clause, the language of which specifically bars local authorities from acting on a particular subject matter; (2) conflict preemption, where the local enactment irreconcilably conflicts with or stands as an obstacle to the execution of the full purposes of the statute; and (3) field preemption, where analysis of the entire statute reveals the General Assembly's implicit intent to occupy the field completely and to permit no local enactments. Both field and conflict preemption require an analysis of whether preemption is implied in or implicit from the text of the whole statute, which may or may not include an express preemption clause.

Id. at 441 (quoting Hoffman Mining Co., Inc. v. Zoning Hearing Bd. of Adams Twp., Cambria Cnty., 32 A.3d 587, 593-94 (Pa. 2011)).

The NMA contains a provision titled, "Preemption of local ordinances," which states, in its entirety:

**(a) General.**—This chapter and its provisions are of Statewide concern and occupy the whole field of regulation regarding nutrient management and odor management, to the exclusion of all local regulations.

**(b) Nutrient management.**—No ordinance or regulation of any political subdivision or home rule municipality may prohibit or in any way regulate practices related to the storage, handling or land application of animal manure or nutrients or to the construction, location or operation of facilities used for storage of animal manure or nutrients or practices otherwise regulated by this chapter if the municipal ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.

10

**(c) Odor management.**—No ordinance or regulation of a political subdivision or home rule municipality may regulate the management of odors generated from animal housing or manure management facilities regulated by this chapter if the municipal ordinance or regulation is in conflict with this chapter and the regulations or guidelines promulgated under it.

**(d) Stricter requirements.**—Nothing in this chapter shall prevent a political subdivision or home rule municipality from adopting and enforcing ordinances or regulations which are consistent with and no more stringent than the requirements of this chapter and the regulations or guidelines promulgated under this chapter. No penalty shall be assessed under any such local ordinance or regulation under this subsection for any violation for which a penalty has been assessed under this chapter.

3 Pa. C.S. §519 (emphasis added).

Contrary to the parties' assertions, the ZHB did not clearly decide this matter on the basis of preemption. Specifically, the ZHB made one Finding of Fact in which it quoted the language of Section 519(b) of the NMA. See F.F. No. 37. It also made one Conclusion of Law in which it stated: "The Section 519(b) preemption language of [the NMA] is applicable to [Applicant's] proposed swine nursery use." Concl. of Law No. 10. However, the ZHB offered no explanation or analysis in support of this vague conclusion.

To that end, our review of the ZHB's decision reveals that the ZHB did not base its decision to grant Applicant's special exception application on the ground that the NMA or its regulations preempt the zoning ordinance. Indeed, the ZHB did not identify any conflict between the NMA or its regulations and the relevant provisions of the zoning ordinance. Rather, the ZHB based its decision to

11

grant Applicant's special exception request on the ground that Applicant satisfied the general and specific criteria set forth in the zoning ordinance to obtain the requested special exception. See F.F. Nos. 25-28, Concl. of Law No. 9 ("Applicant has met the objective criteria of the [z]oning [o]rdinance for an Intensive Agricultural and Agricultural Support use under Section 402(1XE) of the [z]oning [o]rdinance and the general requirements for a special exception under Section 1101(3) of the [z]oning [o]rdinance and is therefore, entitled to approval, subject to the imposition of reasonable conditions.") (emphasis added); ZHB Op. at 3 ("Based on the foregoing Findings of Fact and Conclusions of Law, the [ZHB] … grants Applicant's special exception request per Sections 402(1)(E) and 1101(3) of the [z]oning [o]rdinance subject to the following conditions ….") (emphasis added). Further, the trial court did not base its affirmance of the ZHB's decision on preemption grounds. As a result, we examine the ZHB's determinations that Applicant satisfied the special exception criteria in the zoning ordinance.

## B. Special Exception
### 1. Contentions

Objectors assert the ZHB erred in approving Applicant's special exception application where Applicant did not present substantial evidence to satisfy the objective criteria in the zoning ordinance. They contend the ZHB's conclusory findings do not set forth the relevant special exception criteria, and the ZHB did not identify the record evidence that shows Applicant met its burden of production and persuasion.

Applicant responds that the ZHB determined there were seven specific criteria for a special exception as required by Section 402(1)(E) of the

12

zoning ordinance. Applicant contends he and Rush, a certified nutrient management specialist, demonstrated through credible testimony and evidence that the proposed hog nursery and manure storage facility met the zoning ordinance's specific requirements.

Applicant maintains that the portion of Section 402(1)(E) of the zoning ordinance requiring that facility designs for manure management must not cause "adverse impacts" on adjacent properties is a general condition that must be proven by the objectors to the special exception. See Williams Holding Grp., LLC v. Bd. of Supervisors of W. Hanover Twp., 101 A.3d 1202 (Pa. Cmwlth. 2014). He further argues Objectors did not prove the hog nursery and manure storage facility would adversely affect public health, safety, and welfare in a way not normally expected from an intensive agricultural use allowed as of right by special exception. Applicant asserts Objectors did not present any evidence concerning how the proposed use compared to other intensive agricultural uses. Further, the ZHB found Objectors' witness testimony about soil suitability and road conditions lacked credibility. Applicant contends the evidence presented by Objectors did not meet their heavy burden required to overcome the substantial evidence showing Applicant's proposed use met the specific criteria under the zoning ordinance for an intensive agricultural use by special exception.

## 2. Analysis

A special exception is neither special nor an exception, but rather a use expressly contemplated that evidences a legislative decision that the particular type of use is consistent with the zoning plan and presumptively consistent with the

13

health, safety and welfare of the community. <u>Greth Dev. Grp., Inc. v. Zoning Hearing Bd. of L. Heidelberg Twp.</u>, 918 A.2d 181 (Pa. Cmwlth. 2007).

An applicant for a special exception has both the duty of presenting evidence and the burden of persuading the ZHB that his proposed use satisfies the objective requirements of the zoning ordinance for the grant of a special exception. <u>Manor HealthCare Corp. v. L. Moreland Twp. Zoning Hearing Bd.</u>, 590 A.2d 65 (Pa. Cmwlth. 1991). Once the applicant meets his burden of proof and persuasion, a presumption arises that it is consistent with the health, safety and general welfare of the community. <u>Id.</u> The burden then normally shifts to the objectors of the application to present evidence and persuade the ZHB that the proposed use will have a generally detrimental effect on health, safety and welfare. <u>Id.</u> The evidence presented by objectors must show, to a high degree of probability, that the use will generate adverse impacts not normally generated by this type of use and that these impacts will pose a substantial threat to the health and safety of the community. <u>Greaton Props., Inc. v. L. Merion Twp.</u>, 796 A.2d 1038 (Pa. Cmwlth. 2002).

In <u>Bray v. Zoning Bd. of Adjustment</u>, 410 A.2d 909 (Pa. Cmwlth. 1980), this Court outlined the rules regarding the "initial evidence presentation duty (duty) and persuasion burden (burden) in special exception cases" as follows:

> Specific requirements, e. g., categorical definition of the special exception as a use type or other matter, and objective standards governing such matter as a special exception and generally:
>
> The applicant has both the duty and the burden.
>
> <u>General detrimental effect</u>, e. g., to the health, safety and welfare of the neighborhood:

14

> Objectors have both the duty and the burden; the ordinance terms can place the burden on the applicant but cannot shift the duty.
>
> General policy concern, e. g., as to harmony with the spirit, intent or purpose of the ordinance:
>
> Objectors have both the duty and the burden; the ordinance terms cannot place the burden on the applicant or shift the duty to the applicant.

Id. at 912-13 (emphasis added).

> Section 401(3) of the zoning ordinance states:
>
> Uses Permitted by Special Exception – A use listed in §402 is permitted in any district under which it is denoted by the letter 'S', provided the [ZHB] authorizes the issuance of a zoning permit by the Zoning Officer, subject to the specific requirements contained in the table of use regulations and in §1101(3), as well as all other applicable requirements of this chapter and such further restrictions that [the ZHB] may establish.

Id. In turn, Section 402 of the zoning ordinance provides, in pertinent part:

> 1. Agricultural Uses
>
> * * * *
>
> E.  Intensive Agriculture and Agricultural Support …
>
> Commercial feedlots, veal finishing, hog raising, poultry breeding or egg or meat production operations, livestock auctions, wholesale produce centers, fertilizer and seed distributors, commercial horse farms, grain storage and feed mills, and similar uses shall submit facility designs and

legally binding assurances with performance guarantees which demonstrate that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties. For purposes of this chapter, adverse impacts may include, but are not limited to, groundwater and surface water contamination, groundwater supply diminution, noise, dust, odor, heavy truck traffic, and migration of chemicals offsite. Intensive agriculture and agriculture support uses shall be subject to the following:

(1) Where such uses adjoin a residential district or highway commercial district the intensive agriculture and agriculture support activity, including manure management facilities, shall be set back 400 feet from the property line.

(2) Disposal of deceased animals and birds shall be within 24 hours of death in accordance with State and Federal regulations. While awaiting removal of deceased animals and birds, the facility operator or farmer shall secure the location of the deceased from unauthorized access or scavengers and take precautions to minimize odor or other noxious effects.

(3) Off-street parking and loading shall comply with Part 8 of this chapter.

(4) Signs shall be permitted only as specified in Part 7 of this chapter.

(5) A paved apron or gravel scraping area or other effective means of cleaning of mud and manure to prevent tracking off-site and onto public roadways shall be provided.

(6) Manure management facilities shall be designed, constructed and operated in compliance with Bureau of Water Quality Management

Publication No. 43, 'Manure Management for Environmental Protection,' and any revisions, supplements, and replacement thereof, published by [DEP]. Plans for manure management facilities and any changes thereto during construction shall be reviewed by the Columbia County Conservation District, with proof of their review prior to issuance of a zoning permit.

(7) Manure management facilities shall be secured from unauthorized access.

Section 402(1)(E) of the zoning ordinance.

In addition, Section 1101(3) of the zoning ordinance states, in pertinent part:

Special Exception Applications. … [S]pecial exceptions may be granted or denied by the [ZHB] pursuant to express standards and criteria. The [ZHB] shall hear and decide requests for such special exceptions in accordance with such standards and criteria. In granting a special exception, the [ZHB] may attach such reasonable conditions and safeguards, in addition to those expressed in the chapter, as it may deem necessary to implement the purposes of this chapter. The [ZHB] shall pursue the following procedure.

* * * *

B. No application for a permit shall be granted by the [ZHB] for any special exception use until [the ZHB] has first received and considered an advisory report thereon from the Planning Commission with respect to the location of such use in relation to the needs and growth pattern of the area and, where appropriate, with reference to the adequacy of the site area and arrangement of buildings, driveways, parking areas, off-street truck loading spaces and other pertinent features of the site plan. The Planning Commission shall have 30 days from the date of its receipt of the application within which to file its report thereon. In the event that said Commission shall fail to

17

file its report within such 30 days, such application shall be deemed to have been approved by said Planning Commission.

…

The [ZHB] may thereafter direct the Zoning Officer to issue such permit if, in its judgment, the use meets all specific provisions and criteria contained in this chapter and the following general provisions.

> (1) In accordance with the Comprehensive Plan and consistent with the spirit, purposes and intent of this chapter;
>
> (2) In the best interest of the community, the public welfare and a substantial improvement to the property in the immediate vicinity;
>
> (3) Suitable for the property in question and designed, constructed, operated and maintained so as to be in harmony with and appropriate in appearance to the existing or intended character of the general vicinity;
>
> (4) In conformance with all applicable requirements of this chapter;
>
> (5) Suitable in terms of effects on highway traffic and safety, with adequate access arrangements to protect streets from undue congestion and hazard; and
>
> (6) In accordance with sound standards of subdivision practice, where applicable. …

Id.

Here, the ZHB made three conclusory findings that: (1) Applicant's proposed use qualifies as an Intensive Agriculture use as defined in Section 402(1)(E); (2) Applicant's proposal satisfies the specific special exception criteria

set forth in Section 402(1)(E)(1)-(7); and, (3) Applicant's proposal satisfies the general special exception criteria set forth in Section 1101(3). F.F. Nos. 24, 26, 28; see also Concl. of Law. No. 9. Despite these three conclusory findings, the ZHB did *not* identify the relevant special exception criteria, and it did *not* make any determinations that explain *how* Applicant satisfied each of these criteria.

For example, Objectors assert Applicant did not submit "facility designs and legally binding assurances with performance guarantees which demonstrated that all facilities necessary for manure and wastewater management, materials storage, water supply and processing or shipping operations will be conducted without adverse impact upon adjacent properties … [including] … groundwater and surface water contamination …" as required by Section 402(1)(E) of the zoning ordinance. Objectors argue such legally binding assurances with performance guarantees are not in the record. They further contend Applicant did not present substantive evidence whether natural hazards, such as unstable soils, exist in close proximity to the proposed swine nursery use, as required by Section 604 of the zoning ordinance. The ZHB made no specific findings on these issues.

In addition, despite its citation to Bray, the ZHB made no mention of the fact that Objectors (and not Applicant) bore the "initial evidence presentation duty" or "persuasion burden" as to at least some of these criteria. Bray, 410 A.2d at 912-13.

In the absence of necessary findings on these factual issues, we must remand to the trial court with directions to remand to the ZHB for findings

regarding Sections 402(1)(E) and 1101(3) of the zoning ordinance. Thus, we vacate and remand. See, e.g., Domeisen v. Zoning Hearing Bd. of O'Hara Twp., 814 A.2d 851 (Pa. Cmwlth. 2003) (remand necessary where zoning board did not make necessary findings regarding variance); Musgrave v. City of Pittsburgh Dep't of Planning (Pa. Cmwlth., No. 118 C.D. 2011, filed September 12, 2011), 2011 WL 10819543 (unreported) (remand necessary where, despite passing reference to zoning code's special exception criteria, zoning board did not make findings regarding how applicant satisfied special exception criteria).[8]

ROBERT SIMPSON, Judge

---

[8] Based on our disposition of this matter, we need not address Objectors' argument that the ZHB capriciously disregarded competent evidence of the unsuitability of the soil for application of manure and the condition of Tower Road when it determined Applicant satisfied the special exception criteria in Section 402(1)(E) of the zoning ordinance.

20

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Russell Berner and Donna Berner,    :
Kendall Dobbins, Nathan Roberts,    :
Roberts Realty, LLC, Robert D.    :
Clark, and Robert W. Webber,    :
                Appellants    :
   :
        v.    :   No. 881 C.D. 2015
   :
Montour Township Zoning    :
Hearing Board and Scott Sponenberg    :

# O R D E R

**AND NOW**, this 8th day February, 2016, the order of the Court of Common Pleas of the 26th Judicial District (Columbia County Branch) is **VACATED** and this matter is **REMANDED** to the Court of Common Pleas for further remand to the Montour Township Zoning Hearing Board for proceedings consistent with the foregoing opinion.

Jurisdiction is relinquished.

_____
ROBERT SIMPSON, Judge