# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beall Fowler, Robert Romeril, :
Martin Romeril, Barbara Diamond, :
Timothy T. Stevens, Esquire and :
Bruce Haines, :
     Appellants :
        :
    v. : No. 944 C.D. 2017
        : Argued: April 12, 2018
City of Bethlehem Zoning Hearing :
Board :


BEFORE:  **HONORABLE RENÉE COHN JUBELIRER,** Judge
     **HONORABLE ELLEN CEISLER,** Judge
     **HONORABLE DAN PELLEGRINI,** Senior Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**     **FILED: May 22, 2018**

Beall Fowler, Robert Romeril, Martin Romeril, Barbara Diamond, Timothy T. Stevens, Esquire, and Bruce Haines (Objectors) appeal from an Order of the Court of Common Pleas of Northampton County (trial court), which dismissed Objectors' appeal and affirmed a decision by the City of Bethlehem Zoning Hearing Board (ZHB) to grant a use variance to Morning Star Partners, LLC (Applicant). The trial court found that prior zoning decisions involving the same property did not bar Applicant from seeking this variance under the doctrines of res judicata or collateral estoppel. Moreover, the trial court found that Applicant established the necessary requirements for a use variance, including, *inter alia*, the existence of a hardship that was not self-imposed. We agree that res judicata and collateral estoppel do not bar

this action.  However, Applicant did not show the currently conforming single-family dwelling could not continue to be used as such, and, in the absence of evidence of an unnecessary hardship, we must reverse.

## I.    FACTUAL BACKGROUND

This zoning appeal involves property located at 2 West Market Street, Bethlehem, Northampton County, Pennsylvania (Property).[1]  The Property measures 0.198 acres, or approximately 8276 square feet.  It contains a large single-family residence located on the corner of West Market and New Streets; two smaller buildings that are connected, fronting New Street, which house retail space on the first floor and an apartment on the second floor; and a detached garage with an apartment above.

The Property is located in the RT-Residential Zoning District, which is high density residential.  Retail is not a permitted use in the district, but because the retail uses predate the local zoning ordinance (Ordinance), they are considered lawful nonconforming uses.  In addition, the lot size itself is also nonconforming.  The minimum lot size for the existing uses on the Property is 15,500 square feet.  The Property is adjacent to a commercial district on the north, and nearby are a Verizon store, a law office, the Moravian Academy, the Glemser office building, the Bethlehem Inn, a cemetery, and a mix of residential and commercial uses on Market Street.

Applicant purchased the Property with the intent of using it for its financial services office, which is a commercial use not permitted in the zoning district.  To accomplish its goal, Applicant sought zoning relief on a number of occasions.  Its

---

[1] The Property's address is listed as 511 New Street in the tax assessment records.

first two attempts were unsuccessful. Because those attempts form the basis of Objectors' res judicata or collateral estoppel argument with the most recent zoning relief application, we briefly recount that history now.

### A. Prior Applications

Applicant first sought a special exception and/or variance in 2013 (2013 Application).[2] At that time, Applicant proposed converting the single-family residence into an office and maintaining the two retail spaces. (Nov. 27, 2013 ZHB Decision, Reproduced Record (R.R.) at 10a.) Applicant requested a special exception under Article 1304.04 of the Ordinance, entitled "Reuse of Corner Commercial Uses," which was denied because the single-family residence did not qualify as the primary building with an existing storefront character. (*Id.*) Applicant alternately requested a use variance under Article 1325.06 of the Ordinance, which was also denied. The ZHB found Applicant did not meet its burden of showing a hardship. The ZHB noted the Property was only on the market for four months, undercutting a realtor's testimony that selling the Property is challenging because of its mixed use. (*Id.* at 13a.) The ZHB also found inadequate Applicant's explanation as to why the residence, which was a conforming use, could not remain residential. (*Id.*) It found that Applicant wanted to maximize profitable uses of the Property, which was insufficient for a variance. (*Id.* at 15a.)

Applicant appealed the denial of its 2013 Application to the trial court, which affirmed. (May 20, 2014 Trial Ct. Opinion (Op.), R.R. at 28a-36a.) On appeal to our Court, we similarly affirmed denial of the variance. *Schadt v. City of Bethlehem Zoning Hearing Bd.*, 119 A.3d 439 (Pa. Cmwlth. 2015). This Court found that

---

[2] At the time of the 2013 Application, Applicant had standing as equitable owner of the Property pursuant to an agreement of sale. (Reproduced Record (R.R.) at 5a, 8a.)

3

Applicant did not demonstrate an unnecessary hardship, noting that the single-family dwelling was used as a residence for more than a century. *Id.* at 442. This, we held, "belies the claim that the property cannot be used without a variance." *Id.* We also rejected Applicant's claim that the presence of the nonconforming retail spaces constitutes a unique physical condition that prevents use of the Property in conformance with the Ordinance. *Id.* at 443. We echoed the trial court by saying that Applicant was not "entitled to make the property **more** nonconforming by virtue of the existing non-conformance." *Id.* (emphasis added).

In April 2014, while the appeals were pending, Applicant submitted a second application (2014 Application), this time seeking a use variance and a dimensional variance. The ZHB denied the 2014 Application on the grounds of res judicata. (June 6, 2014 ZHB Decision, R.R. at 18a-26a.) This decision was not appealed.

### B. Present Application

In 2016, Applicant submitted its third zoning application (2016 Application), which is the subject of this appeal. In the 2016 Application, it sought a special exception for the change of one nonconforming use to another or, in the alternative, a use variance to convert the existing residence and retail building into offices and one apartment.

At a hearing on the 2016 Application, the Zoning Officer testified that this was the first time the Applicant was before the ZHB for a proposed single-residential use and single-office use. She testified that the minimum square footage for the proposed uses under the Ordinance still exceeded the Property's lot size – 9500 square feet (minimum) versus 8276 square feet (actual). Therefore, the proposed use would reduce the size of the lot nonconformity.

4

Applicant's Engineer also testified at the hearing as to the specifics of the Property and the proposed use, as well as the adjacent uses. Because the retail space is less than 10 feet from the residence, according to Engineer, the Property cannot be subdivided. Engineer testified that under the plan, "two uses [are] replacing five." (Hr'g Tr., Supplemental Reproduced Record (S.R.R.) at 24b.)

Applicant also presented a pre-construction services witness (Contractor), who testified as to the scope and cost of renovations. Contractor explained the exterior of the residence would be unchanged to maintain its residential character. The residence would be painted, a wheelchair ramp installed, a porch reconstructed, sidewalks repaired, and landscaping completed. All changes would meet applicable Historic District guidelines. Interiorly, the first floor kitchen would be removed and replaced with a kitchenette. The front door and bathrooms would be made ADA-compliant. The second floor would have walls removed to allow for the creation of five offices. The third floor attic would also be renovated. Renovations would also be made to the buildings housing the retail space and the studio apartment above the garage. Total cost for renovations is approximately $722,000.[3]

On cross-examination, Contractor acknowledged that the current nonconforming retail spaces "[p]robably" could be converted into residential space for the same amount. (*Id.* at 69b.) When asked by a ZHB member what the extent of the renovations would be in order to maintain the single-family house as a residential unit, Contractor responded: "If that were a residential [unit], somebody were to buy it as a house, we believe they would have to invest another $225,000 into the property." (*Id.* at 73b.) The retail buildings are "prime candidates for

---

[3] This cost includes $69,000 for exterior work, $406,000 for interior renovations to the single-family residence, $190,000 for work to the retail buildings, and $57,000 for renovations to the garage apartment.

5

razing," but Contractor acknowledged that given their historic nature, obtaining approval to do so would be difficult. (*Id.* at 75b-78b.)

A commercial loan officer also testified that financing was difficult to obtain because of the Property's mixed uses. A partner at Applicant testified the financial services office would have 14 employees, 11 of whom would be full-time and 3 of whom would be part-time. Only one to two clients would visit the office each day.[4] Office hours would be Monday through Friday, 8:30 a.m. to 4:30 p.m. There would be no signage, except for an address plate.

In addition, at the hearing, a number of Objectors testified in opposition to the project and a number of residents and business owners testified in support of it.

### C. ZHB Decision

Following the hearing, the ZHB voted 4-0 to deny the special exception request. The ZHB rejected Applicant's argument that the entire Property was nonconforming, instead finding that only the two retail spaces were nonconforming. (July 15, 2016 ZHB Decision at 6-7.) It also rejected Applicant's argument that the dimensional nonconformities do not render the entire Property nonconforming. (*Id.* at 7.) Thus, the proposal did not involve a change from one nonconforming use to another.[5] (*Id.* at 6.)

The ZHB, however, voted 3-1 to grant the use variance under Article 1325.06 of the Ordinance, subject to certain conditions.[6] The ZHB found Applicant satisfied

---

[4] Sufficiency of parking is not a concern. Zoning Officer testified that there was sufficient existing parking to accommodate the proposed uses. In addition, Engineer testified that clients and employees would utilize off-site parking at a nearby garage.

[5] Applicant did not appeal the denial of the special exception.

[6] The conditions include a requirement that Applicant make renovations to the building comparable to those testified to, such that the exterior of the residence remains substantially similar

6

its burden of proof. With regard to the hardship element, the ZHB found the following physical hardships existed:

- The Property is less than 9,000 [square feet] in area but contains a single-family residence, a garage with a second story apartment, and a third building with two retail units on the first floor and an apartment on the second floor. There is an existing parking area and little outdoor space to serve a residential use.

- The home on the Property dates to 1840 and is in need of significant renovation irrespective of whether the use is commercial or residential in nature.

- The retail building dates to 1820 and is a former Moravian brass foundry. Applicant's expert testified that, in his opinion, it would be unlikely that the approvals necessary to raze that building to create open space on the lot to serve the residents and to remove the commercial component of the property would be approved, due to the historic nature of the building.

- Converting the first floor of the retail building to residential use is difficult.

- The Property is located in an area that is mixed in character, with a significant presence of offices and institutional use. (While a majority of the offices are in an adjacent zoning district that permits commercial use, some of those offices are not.)

- Because of the mixed use character of the Property, any sale of the Property would require a purchaser to obtain a commercial not residential mortgage on the lesser favorable terms associated with a commercial mortgage.

---

and retains its residential character; that the portion of the Property occupied by the office be limited to the residence and first floor of the retail space with the second floor available for storage and Applicant is to maintain the apartment above the garage; that the Property is limited to one business entity and shall be used solely for professional offices; and that the business have no more than 14 employees (11 full-time and 3 part-time) as detailed in the testimony. (July 15, 2016 ZHB Decision at 13.)

7

- By reducing the number of uses on the Property, the nonconforming nature of the area of the lot is decreased, since the existing uses would require a larger lot area than the proposed uses.

(*Id.* at 9-10.)

The ZHB further found that the "proposed use is in harmony with the purpose and intent of the Zoning Ordinance and will not be injurious to the neighborhood or otherwise detrimental to the public welfare." (*Id.* at 10.) In support, it cited one resident's testimony that the proposed use is more beneficial than converting the residence to a seven- or eight-unit, multi-family use, which would be permitted under the Ordinance. (*Id.*) The ZHB called the Property "unique" in that it is a combination of residential use and commercial use. (*Id.*) This uniqueness, the ZHB found, reduces the desirability of the Property. (*Id.* at 11.) According to the ZHB, the hardship is not general and shared by neighboring properties because those properties do not have the same combination of residential and commercial buildings dating back to the 1800s. (*Id.*) The ZHB concluded that a use variance would be the minimum required, and the proposed use is a reasonable use of the Property. (*Id.*) Finally, the ZHB found "[t]here is no rule of law that would justify requiring a property owner to abandon the use of the commercial building on the Property," and that requiring the Property to be converted entirely to residential would result in a need to raze the commercial structure or leave its first floor vacant. (*Id.*)

### D. Trial Court Decision

Objectors appealed to the trial court, which did not take additional evidence. The trial court dismissed Objectors' appeal and affirmed the ZHB's decision. Before the trial court, Objectors raised the same issues they raise now. The trial court found res judicata and collateral estoppel did not bar the 2016 Application. The trial court

8

found that "[w]hile the 2013 [Application] involved the same [P]roperty and the same parties, and the request set forth in the [2016 A]pplication is similar, it is not the same, in that [Applicant] requested a special exception under a different article of the Ordinance . . . and . . . made a different request for relief." (June 14, 2017 Trial Ct. Op. at 9.) The trial court stated that Applicant now seeks to reduce the number of commercial spaces from two to one and maintain the residential space, whereas the 2013 Application sought three commercial spaces and no residential spaces.[7] (*Id.*)

The trial court also rejected Objectors' arguments concerning hardship, finding that case law did not support Objectors' claim that Applicant's purchase of the property with knowledge of the zoning restrictions resulted in a self-inflicted hardship. (*Id.* at 10.) The trial court also rejected Objectors' claim that Applicant failed to establish that the Property could not be developed in the absence of a variance or that the variance was the minimum required to afford relief. (*Id.* at 12.) The trial court quoted *Marshall v. City of Philadelphia*, 97 A.3d 323 (Pa. 2014), for the proposition that

> a zoning board's discretion is not so circumscribed as to require a property owner to reconstruct a building to a conforming use regardless of the financial burden that would be incident thereto. Especially is this true where the change sought is from one nonconforming use to another more desirable nonconforming use that will not adversely affect but better the neighborhood. Thus, economic factors are relevant, albeit not determinative, in a variance assessment.

---

[7] In its subsequent Rule 1925(a) Opinion, Pa.R.A.P. 1925(a), the trial court acknowledged it erred in stating that no residential spaces would remain under the 2013 Application, as two residential units were proposed. However, the trial court found it was of no consequence because different relief was still sought.

(June 14, 2017 Trial Ct. Op. at 12-13 (internal citations omitted) (quoting *Marshall*, 97 A.3d at 330-31).)

The trial court stated that while the ZHB acknowledged that the Property could be converted entirely to residential in conformity with the Ordinance and such a change would not be cost prohibitive, the ZHB also recognized that denying the variance "would belie the landowner's right, running with the land, to continue a legal non[]conforming use." (*Id.* at 13.) The trial court further concluded:

> that the reduction in the non[]conformity of the [P]roperty, coupled with evidence that the proposed use would bring a very small number of visitors to the [P]roperty, would not require signage or parking relief, no exterior changes would be made to the residence to diminish its residential character, and it was not likely that any change of use would be readily apparent from the outside of the premises, resulted in the Board properly granting the required variance based upon substantial evidence.

(*Id.*)

Objectors timely appealed to this Court. On appeal,[8] Objectors argue[9] that Applicant's most recent request for zoning relief is barred by the doctrine of res judicata and/or collateral estoppel based upon prior litigation involving earlier zoning requests concerning the same Property. Objectors note that there has been no physical change in the Property that would entitle Applicant to relief. Further,

---

[8] In a land use appeal where the trial court does not take additional evidence, such as here, our review is limited to determining whether the ZHB abused its discretion or committed an error of law. *In re Thompson*, 896 A.2d 659, 666 n.4 (Pa. Cmwlth. 2006). The ZHB abuses its discretion when its findings of fact are not supported by substantial evidence. *Id.* Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*

[9] Objectors' Statement of the Case in their brief contains argument contrary to Rule 2117(b) of the Rules of Appellate Procedure, Pa.R.A.P. 2117(b), which provides that the statement of the case is to be a "balanced presentation of the history of the proceedings and the respective contentions of the parties."

Objectors point out that this Court previously decided there was no hardship. Assuming the Court reaches the merits, Objectors argue the evidence presented at the most recent hearing does not establish a hardship, and even if one is found, it is self-inflicted. They argue that the evidence shows the Property can be used for a permitted use – a single-family residence – with less expensive renovations than the proposed nonconforming office use would require. Objectors claim Applicant knew of the zoning impediment when it purchased the Property and any claimed economic hardship is the result of Applicant's own desire to convert the Property from a residence to a commercial office use.

Applicant argues[10] that res judicata and/or collateral estoppel do not apply because it is seeking relief for a different use and is proceeding under a different theory than the 2013 Application. It also argues that nonconformity is recognized as an unnecessary hardship as a matter of law, and thus, the ZHB did not abuse its discretion or commit an error of law in concluding that the nonconforming use at the Property constitutes an unnecessary hardship depriving Applicant of the Property's reasonable use. Finally, it points out that the ZHB did not find the cost of renovation to be a hardship. Thus, Objectors' argument of a self-inflicted hardship is misplaced.

We will address Objectors' issues in turn.

## II. ANALYSIS

### A. *Res Judicata/Collateral Estoppel*

The doctrine of res judicata is applied "sparingly" in zoning cases. *Harrington v. Zoning Hearing Bd. of E. Vincent Twp.*, 543 A.2d 226, 228 (Pa. Cmwlth. 1988). This is because "zoning is a continuing regulation and flexibility in

---

[10] The ZHB joined in Applicant's Brief.

11

zoning matters outweighs the risk of repetitive litigation." *Schubach v. Silver*, 336 A.2d 328, 333 (Pa. 1975) (quotation omitted). Res judicata applies if the following elements concur:

> (1) the identity of the thing sued for; (2) the identity of the cause of action; (3) the identity of the persons and parties to the action; and (4) the identity of the quality in the persons for or against whom the claim is made, and then, only if there are no substantial changes in circumstances relating to the land itself.

*Callowhill Ctr. Assocs., LLC v. Zoning Bd. of Adjustment*, 2 A.3d 802, 809 (Pa. Cmwlth. 2010).

Further, res judicata "subsumes" collateral estoppel. *Id.* This doctrine applies if: (1) the issue previously decided is identical to the one presented in the later case; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party in the prior case; (4) there was a full and fair opportunity to litigate the issue in the prior proceeding; and (5) the determination in the prior proceeding was essential to the judgment. *Id.*

Our Court has held that a change in theory prevents the application of res judicata. *Harrington*, 543 A.2d at 228. In *Harrington*, we explained that while the second application retained some of the elements of the original application, the theory of the second application was more expansive; therefore, res judicata did not apply. *Id.* We reached a similar result in *Township of Harrison v. Smith*, 636 A.2d 288 (Pa. Cmwlth. 1993). In that case, we noted that the second variance request differed dimensionally from the first. *Id.* at 290. Because the second application reduced the size of the structure by half and increased the setback measurements, we held res judicata did not bar the subsequent application. *Id.* Likewise, in *Bell v. Zoning Board of Adjustment of City of Pittsburgh*, 479 A.2d 71 (Pa. Cmwlth. 1984),

12

we concluded a subsequent zoning application differed from the first one. We explained, in the first application, the applicants sought a variance to use their property for three dwelling units, whereas, in the subsequent application, the applicants sought to use the property for only two dwelling units and also sought to avoid the side yard, lot size, and parking requirements. Thus, the relief sought in each application was not identical, and res judicata did not apply. *Id.* at 73.

On the other hand, when the request is identical, we have held the doctrines of res judicata and/or collateral estoppel apply. In *Callowhill*, for instance, we held a final determination in a prior case barred a second application when the variance sought was for the same size and type of sign. 2 A.3d at 809; s*ee also Jacquelin v. Zoning Hearing Bd. of Hatboro Borough*, 620 A.2d 554, 572-73 (Pa. Cmwlth. 1993) (applying both doctrines when the 1991 application was identical to the 1987 application, seeking a determination that the subject property is in a residential district or, alternatively, a variance); *Namcorp, Inc. v. Zoning Hearing Bd. of Horsham Twp.*, 558 A.2d 898, 901 (Pa. Cmwlth. 1989) (res judicata barred second application where variance was same as that sought earlier).

Here, in the 2013 Application, Applicant sought to convert the single-family residence into an office and maintain the two retail spaces, thereby creating three commercial spaces, in addition to maintaining two apartments. Applicant requested a special exception under Article 1304.04 of the Ordinance, entitled "Reuse of Corner Commercial Uses," and alternatively, a use variance under Article 1325.06 of the Ordinance. Both requests were denied.

In the 2016 Application, Applicant again sought a special exception, but this time for a change from one nonconforming use to another, under a different article of the Ordinance. It also alternatively sought a use variance to enable it to convert

13

the single-family residence and retail space into offices with one apartment above. Whereas the 2013 Application called for three commercial spaces and two apartments, the 2016 Application sought one commercial office space and one apartment. In fact, the Zoning Officer testified that this was the first time the Applicant was before the ZHB for a proposed single-residential use and single-office use. (Hr'g Tr., S.R.R. at 9b-10b.) Therefore, Applicant proceeded under different theories and sought different relief. *Harrington*, 543 A.2d at 228; *Bell*, 479 A.2d at 73. As a result, neither the doctrine of res judicata nor the doctrine of collateral estoppel should control.

To the extent Objectors argue that there has been no change in circumstances relating to the **land** itself, Objectors' view is too constrained. A review of our precedent shows that the physical characteristics of the land do not have to change. As the cases discussed above illustrate, the relevant change is the **scope** of the proposed project. *Twp. of Harrison*, 636 A.2d at 290 (second application differed dimensionally); *Harrington*, 543 A.2d at 228 (second application was more expansive); *Bell*, 479 A.2d at 73 (reduction from three dwelling units to two); *see also Domeisen v. Zoning Hearing Bd. of O'Hara Twp.*, 814 A.2d 851 (Pa. Cmwlth. 2003) (first application proposed 300 percent increase in floor area compared to 129 percent increase in second application); *Serban v. Zoning Hearing Bd. of City of Bethlehem*, 480 A.2d 362, 364 (Pa. Cmwlth. 1984) (reduction in scope of variance request, *inter alia*, constituted sufficient change to prevent application of res judicata). In *Church of the Saviour v. Zoning Hearing Board of Tredyffrin Township*, in addition to a change in theory, we held a change in the type of counseling to be provided at the proposed use was sufficient to bar application of res judicata. 568 A.2d 1336, 1337-38 (Pa. Cmwlth. 1989). There, under the original

14

application, counseling was to be provided by a non-profit organization; under the subsequent application, counseling was to be provided by a church employee and four other counselors. *Id.* at 1337. The change in proposals between the 2013 Application and 2016 Application is sufficient to support a conclusion that there is minimal identity as to the causes of action. Therefore, neither the doctrine of res judicata nor the doctrine of collateral estoppel apply.

### *B.* *Variance*

We next determine whether Applicant has met the requirements for a use variance. Article 1317.28 of the Ordinance provides that an applicant may request a variance if compliance with the Ordinance would result in an exceptional hardship. The Ordinance further provides that in order to grant a variance, the ZHB must find:

(1) There are unique physical circumstances or conditions (including irregularity, narrowness, or shallowness of the lot size or shape, or exceptional topographical or other physical conditions peculiar to the particular property) and that the unnecessary hardship is due to such conditions and not the circumstances or conditions generally created by the provisions of this Ordinance in the neighborhood or district in which the property is located;

(2) Because of such physical circumstances or conditions, there is no possibility that the property can be developed in strict conformity with the provisions of the Zoning Ordinance and a Variance is therefore necessary to enable the reasonable use of the property;

(3) Such unnecessary hardship has not been created by the appellant;

(4) The Variance, if authorized, will not alter the essential character of the neighborhood or district in which the property is located, nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

15

(5)     The Variance, if authorized, will represent the minimum variance that will afford relief and will represent the least modification possible of the regulation in issue.

Ordinance, Art. 1325.06(b).[11]

A property owner seeking a variance bears a heavy burden. *Society Created to Reduce Urban Blight v. Zoning Bd. of Adjustment of City of Phila.*, 921 A.2d 536, 545 (Pa. Cmwlth. 2007). To establish unnecessary hardship, as required for a use variance, "an applicant must demonstrate that the property cannot be used for a permitted purpose, that the cost to conform the property for a permitted purpose is prohibitive, or that the property has no value for a permitted purpose." *Singer v. Phila. Zoning Bd. of Adjustment*, 29 A.3d 144, 151 (Pa. Cmwlth. 2011). It bears emphasis that "the relevant inquiry is whether the hardship created by the . . . zoning provisions is unique to the subject property as distinguished from the hardship arising from the impact of the zoning regulations on the entire district, or the impact of the zoning regulations on the owner of the property." *Bawa Muhaiyaddeen Fellowship v. Phila. Zoning Bd. of Adjustment*, 19 A.3d 36, 41 (Pa. Cmwlth. 2011) (emphasis omitted).

Here, the ZHB found a number of physical hardships existed because of the unique nature of the Property. Despite its small square footage, the Property contains a single-family residence, a garage with a second-story apartment, and a third building with two retail units on the first floor and an apartment on the second floor.[12] (July 15, 2016 ZHB Decision at 9.) The structures, combined with an existing parking area, leave little open space to serve a residential use. (*Id.*) As a

---

[11] The Ordinance is consistent with the requirements for a variance found in Section 910.2 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, added by Section 89 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10910.2.

[12] There was testimony at the hearing that there was no other single property in the City similar to the Property's mixed nature.

16

result of the mixed character of the Property, only commercial mortgages, which offer less favorable terms, would be available. (*Id.* at 10.) In addition, the structures are historic, making needed renovations significant and razing virtually impossible. (*Id.* at 11.) Based upon these findings, we agree that the unique physical characteristics of the Property are not common to the general area.

To be entitled to a use variance, Applicant must also show that there is no possibility of developing the Property in strict conformity with the Ordinance, such that a variance is required to enable its reasonable use. Objectors argue the evidence shows that the Property can be completely converted into a single-dwelling residence, thereby eliminating any nonconformity – dimensional or otherwise. The ZHB, however, credited the Applicant's evidence that requiring the Property to be entirely residential would result in the need to either raze the retail spaces or leave that space vacant. (*Id.* at 11.) This finding supports the conclusion that the Property cannot reasonably be used **solely** as a residential property. In order to become fully compliant with the Ordinance, Applicant would have to abandon its lawfully existing, nonconforming use. Like the ZHB and trial court, we find no support for forcing Applicant to convert lawful, nonconforming uses into a residential, conforming one. "We recognize our courts 'have never required demolition of a legally non[]conforming structure to afford the opportunity to bring the property into compliance with the relevant zoning code.'" *Demko v. City of Pittsburgh Zoning Bd. of Adjustment*, 155 A.3d 1163, 1168 (Pa. Cmwlth. 2017) (quoting *Marshall*, 97 A.3d at 332). Similarly, there is no requirement that an owner must reconstruct a building to a conforming use. *Id.*

While Applicant may not be forced to convert the entire Property into a residential one because some of the structures thereon are currently lawful,

17

nonconforming uses, importantly here, Applicant is also seeking to convert the **only fully conforming structure on the Property** – the single-family dwelling – to a **nonconforming** one. Moreover, as Objectors point out, Applicant wants to do this at significantly greater cost than maintaining the conforming single-family dwelling as residential. The ZHB acknowledged that the house can still be used as a residence, including a multi-family residence as of right under the Ordinance; yet it concluded using it as commercial office space was more desirous. (July 15, 2016 ZHB Decision at 10.) This is not the standard.[13] Applicant had the burden to show the Property could not be used for a permitted purpose. *Singer*, 29 A.3d at 151. Applicant did not show the currently conforming single-family dwelling could not continue to be used as such. For this reason, we find the trial court erred in concluding Applicant was entitled to a use variance. Accordingly, we reverse.

_____
**RENÉE COHN JUBELIRER,** Judge

---

[13] The ZHB also made a number of findings related to Applicant's plan to maintain the exterior of the home such that its residential character is not diminished and Historic District guidelines are met. As we explained in *Schadt*, when the 2013 Application was before us, "The fact that the buyer does not intend to change the exterior of the home is also of no moment. Historic preservation should not be confused with land use." 119 A.3d at 443.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Beall Fowler, Robert Romeril,     :
Martin Romeril, Barbara Diamond,    :
Timothy T. Stevens, Esquire and    :
Bruce Haines,                      :
           Appellants  :
                           :
         v.            :  No. 944 C.D. 2017
                           :
City of Bethlehem Zoning Hearing  :
Board                         :

## O R D E R

NOW, May 22, 2018, the Order of the Court of Common Pleas of Northampton County, affirming the City of Bethlehem Zoning Hearing Board's grant of a use variance in the above-captioned matter, is **REVERSED**.

_____

**RENÉE COHN JUBELIRER,** Judge
