# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Beall Fowler, Estate of Robert Romeril, Martin Romeril, Barbara Diamond, Steven Diamond and Bruce Haines, | : : : : | |
| Appellants | : : | |
| v. | : | No. 836 C.D. 2022 |
| | : | SUBMITTED: May 7, 2024 |
| City of Bethlehem and Morning Star Partners, LLC | : : | |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
              HONORABLE CHRISTINE FIZZANO CANNON, Judge
              HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

## OPINION NOT REPORTED

**MEMORANDUM OPINION BY**
**SENIOR JUDGE LEADBETTER**                    **FILED:  June 10, 2024**

Appellants, Beall Fowler, Estate of Robert Romeril, Martin Romeril, Barbara Diamond, Steven Diamond, and Bruce Haines, appeal from the order of the Court of Common Pleas of Northampton County, denying their procedural validity challenge to Ordinance No. 2018-40, brought pursuant to Section 5571.1 of the Judicial Code, 42 Pa.C.S. § 5571.1.  We affirm.[1]

---

[1] This case was considered seriately with related cases *Beall Fowler, Estate of Robert Romeril, Martin Romeril, Barbara Diamond, Steven Diamond, and Bruce Haines v. City of Bethlehem and City of Bethlehem Zoning Hearing Board, and Morning Star Partners, LLC* (Pa. Cmwlth., No. 834 C.D. 2022, filed June 10, 2024), and *Estate of Robert Romeril and Gwendolyn-Jane Romeril v. City of Bethlehem Zoning Hearing Board and Morning Star Partners, LLC* (Pa. Cmwlth., No. 835 C.D. 2022, filed June 10, 2024).

At the center of this long-running dispute is the property owned by Morning Star Partners, LLC (Morning Star) and located at 2 West Market Street in the City of Bethlehem, Northampton County, Pennsylvania. Trial Ct. Op. at 3. The property is within the City's RT-Residential Zoning District and is a mixed-use parcel, containing a single family dwelling, rental units, two apartments in accessory buildings which also house retail uses, and a detached garage. *Id.* at 3 n.3.

Morning Star made three previous attempts to obtain variance relief in order to conduct a business office use out of the single family dwelling portion of the property. *See Fowler v. City of Bethlehem Zoning Hearing Bd.*, 187 A.3d 287 (Pa. Cmwlth. 2018).[2] All three attempts were ultimately unsuccessful. Morning Star then filed a petition for a map change but later withdrew that petition.

At issue here, in September 2018, Morning Star filed a petition to City Council seeking to amend Article 1304.04 of the City's Zoning Ordinance.[3] Trial Ct. Op. at 1-2. Morning Star specifically sought to add subsection (b) to Article 1304.04, the pertinent part of which provides as follows:

> (b) As a special exception, the conversion of a single family dwelling to an office use may be approved by the Zoning Hearing Board [] provided all of the following requirements are met:
>
> (1) The lot shall be at the corner of [two] streets and shall contain some form of a nonconforming retail or commercial use in combination with a single family dwelling.

---

[2] As the *Fowler* Court noted, retail is not a permitted use in the RT district, but because the retail uses on the property predate the Ordinance they are lawful nonconforming uses. 187 A.3d at 289.

[3] City of Bethlehem Zoning Ordinance, Ordinance No. 2210 (1970), *as amended*. Article 1326.02(c) of the Ordinance permits, *inter alia*, a landowner to file a petition proposing an amendment thereto.

(2) This subsection [two] may allow an office use to be established in the single family dwelling even while the nonconforming commercial or retail use on the same lot continues. The office use shall be limited to within the existing single family dwelling, and may not involve building expansions for the use, other than as may be necessary for fire safety or handicapped access.

. . . .

(7) The office uses to be permitted under this section shall be limited to those of medicine, law, architecture, engineering, art, religion, music, insurance, real estate, psychology, accounting, and financial services.

*Id.* at 2-3 (Amendment). The Amendment was then submitted to the Lehigh Valley Planning Commission and the City's Planning Commission for review, and both agencies presented their recommendations to City Council. *Id.* at 3.

Following public hearings, at which time Appellants voiced their concerns, City Council voted 4-3 to approve the Amendment and it was signed by the City's Mayor in December 2018. Trial Ct. Op. at 4. Appellants then filed their procedural validity challenge in the trial court,[4] alleging that City Council failed to comply with the notice requirements of both the Zoning Ordinance[5] and Section 609(b) of the Pennsylvania Municipalities Planning Code (MPC).[6] Prior to commencement of the non-jury trial, the parties stipulated that proper notice was given if the Amendment qualifies as a text amendment, and that notice was deficient if the Amendment is instead a map change. Trial Ct. Op. at 8. Also prior to trial, Appellants moved for the admission into evidence of certain transcripts of meetings

---

[4] Morning Star filed a notice of intervention in the matter.

[5] Ordinance Art. 1326.03(a).

[6] Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 10609(b).

of City Council and the City's Planning Commission pertaining to the Amendment. The City opposed the motion and the trial court directed that the issue be submitted on briefs.

After reviewing pertinent case law, the trial court determined that the Amendment is a text amendment rather than a map change and, pursuant to the parties' stipulations, proper notice was provided. The trial court explained that "the Amendment does not cause such substantial change to the [pertinent zoning districts] as to be deemed a comprehensive zoning scheme, nor does it single out a discrete parcel creating an island." Trial Ct. Op. at 13. In addition, the trial court denied Appellants' motion seeking admission of the transcripts, specifically referring to a prior interlocutory order addressing the same issue. *Id.* This appeal followed.

Appellants raise the same arguments herein as they did before the trial court; namely, that the Amendment constitutes a map change rather than a text amendment and therefore is invalid as the proper notice procedures were not followed. Appellants further maintain that the trial court abused its discretion by failing to admit into evidence transcripts from meetings of City Council and the City's Planning Commission.[7]

Upon review of the record, the parties' arguments, and the law, we conclude that the trial court ably addressed and resolved the issues raised by Appellants. Accordingly, we affirm on the basis of the thorough and well-reasoned

---

[7] This last issue is dealt with more fully in the trial court's interlocutory order and opinion denying Appellants' purported motion for leave to take additional evidence, issued May 14, 2021. As the trial court notes, much of Appellants' proffered evidence was either not relevant to the ultimate issues in the case or not appropriate because the "testimony" was not taken under oath and would not afford Morning Star the ability to cross-examine adverse witnesses. *See* Trial Ct. Op., 5/14/21 at 6 [citing Section 908(5) of the MPC, 53 P.S. § 10908(5) ("The parties . . . shall be afforded the opportunity to respond and present evidence and argument and cross-examine adverse witnesses on all relevant issues.")].

4

opinion of the Honorable Craig A. Dally in *Beall Fowler, Estate of Robert Romeril, Martin Romeril, Barbara Diamond, Steven Diamond, and Bruce Haines v. City of Bethlehem and Morning Star Partners, LLC* (C.C.P. Northampton, No. C-48-CV-2019-00436, filed July 6, 2022) (appended hereto).

**BONNIE BRIGANCE LEADBETTER**
President Judge Emerita

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | |
|---|---|
| Beall Fowler, Estate of Robert Romeril, Martin Romeril, Barbara Diamond, Steven Diamond and Bruce Haines,<br><br>     Appellants<br><br>     v.<br><br>City of Bethlehem and Morning Star Partners, LLC | :<br>:<br>:<br>:<br>:<br>:<br>:  No. 836 C.D. 2022<br>:<br>:<br>:<br>: |

# **O R D E R**

AND NOW, this 10th day of June, 2024, the Order of the Court of Common Pleas of Northampton County is hereby AFFIRMED.

            _____
            **BONNIE BRIGANCE LEADBETTER**
            President Judge Emerita



# IN THE COURT OF COMMON PLEAS OF NORTHAMPTON COUNTY, PENNSYLVANIA

## CIVIL DIVISION

BEALL FOWLER, ESTATE OF ROBERT
ROMERIL, MARTIN ROMERIL,
BARBARA DIAMOND, STEVEN
DIAMOND, and BRUCE HAINES,
        Appellants,
   v.

CITY OF BETHLEHEM,
        Appellee,
  and

MORNING STAR PARTNERS, LLC,
        Intervenor.

:
:
:
:
:
:    C-48-CV-2019-00436
:
:
:
:
:
:
:
:

## ORDER OF COURT

AND NOW, this __6th__ day of July, 2022, upon consideration of Appellants', Beall

Fowler, Estate of Robert Romeril, Martin Romeril, Barbara Diamond, Steven Diamond, and

Bruce Haines, Appeal to the enactment of Bill 46-2018- Zoning Text Amendment-Section

1304.01- Reuse of Corner Commercial uses Allowed in the RT and RG Districts, Appellee the

City of Bethlehem's, and Intervenor Morning Star Partners, LLC's, response thereto, the legal

memoranda filed in support thereof, and the arguments heard before the undersigned, the Court

ORDERS and DECREES that said appeal is hereby DENIED based upon the following

Statement of Reasons:

## STATEMENT OF REASONS

### Factual and Procedural History

On September 27, 2018, Intervenor Morning Star Partners, LLC ("MSP") filed a Petition

to the City Council of the City of Bethlehem ("City Council") for Amendment to the City's

Zoning Ordinance pursuant to the City of Bethlehem Zoning Ordinance ("Zoning Ordinance")

1

A-3

1326.02(c).[1] MSP specifically sought the amendment of Article 1304.04[2] to provide for a special exception by adding subsection (b), which provides:

> (b)As a special exception, the conversion of a single family dwelling to an office use may be approved by the Zoning Hearing Board ("the Board") provided all of the following requirements are met:
>
> (1) The lot shall be at the corner of 2 streets and shall contain some form of a nonconforming retail or commercial use in combination with a single family dwelling.
>
> (2) This subsection 2 may allow an office use to be established in the single family dwelling even while the nonconforming commercial or retail use on the same lot continues. The office use shall be limited to within the existing single family dwelling, and may not involve building expansions for the use, other than as may be necessary for fire safety or handicapped access.
>
> (3) In considering whether to approve the special exception use, the Board shall consider whether the total impact upon the neighborhood and parking needed for all uses on the lot after the new use would be in operation would exceed the total impact of all uses City of Bethlehem Zoning Ordinance Article 1304.32 on the lot that existed prior to the application. For example, this decision may consider whether the applicant proposes to reduce the number of dwelling units on the lot.
>
> (4) The Board shall have the authority to place reasonable conditions upon the office use, such as but not limited to: limits on hours of operation, limits on the maximum floor area occupied by the use, requirements that the operator of the use regularly collect litter on the sidewalk and gutters at edge of street adjacent to the

---

[1] Article 1326.02(c) states:
> Who May Initiate. Proposals for amendment or repeal may be initiated by City Council on its own motion, by the Planning Commission, or by petition of one or more citizens, subject to the following provisions:
> ***
> (c) Proposals originated by a citizen's petition. Each petition of a proposal for amendment to the zoning ordinance by citizens or a landowner must be submitted in writing to the City Council together with a fee as provided in the City Fee Schedule, plus payment in full by the applicant of all costs incurred by the City in publishing of legally required advertising. On receipt of said petition and payment, Council shall transmit a copy of the petition to the Planning Commission at least 30 days prior to the hearing on such proposed amendment. Within 30 days after its submission to the Planning Commission, the Commission should submit to City Council a report containing the Commission's recommendation, including any additions or modifications of the original proposal. Failure of the Planning commission to submit such report within 30 days shall not by itself delay a hearing. All proposal originated by a citizen's petition for rezoning/zoning map revisions must be acknowledged by a Notary Public and signed by the owners of 50% or more of the land proposed to be rezoned.

[2] Article 1304.4 is titled Reuse of Certain Corner Lots Allowed in RT and RG Districts.

2

A-4

lot, and conditions that preserve and enhance the residential character of the neighborhood.

(5) As part of the special exception, the Board shall have the authority to modify off-street parking requirements, considering the total impact of the new uses of the lot versus the previous uses, and considering whether a percentage of customers are likely to arrive by public transit and/or walking. The Board may also approve a reduction in the required parking as part of the special exception approval if the applicant proves that there is an excess of on-street parking spaces during hours when the business will be in operation.

(6) Signs shall need approval as part of the special exception process. The Board may approve a total sign area of up to 20 square feet, which shall be limited to projecting, wall and/or window signs. No new sign shall be internally illuminated. Any lighting of signs shall be limited to hours when the use is open to the public. All signs must comply with any applicable Historical Architectural Review Board (HARB) and Historic Conservation Commission (HCC) regulations and any other applicable laws and regulations.

(7) the office uses to be permitted under this Article shall be limited to those of medicine, law, architecture, engineering, art, religion, music, insurance, real estate, psychology, accounting and financial services.

See Ex. 7. MSP owns the property located at 2 West Market Street (the "Property") within the City of Bethlehem (the "City"). Id.[3] The Property is located within an RT-Residential Zoning District. See Zoning Ordinance Article 1303.02.[4]

The Amendment was subsequently submitted to the Lehigh Valley Planning Commission ("LVPC") and the Planning Commission of the City of Bethlehem ("Planning Commission") for review. LVPC explained that the Amendment "was a matter of local concern," while the Planning Commission voted to not pass the Amendment in a 2-2 tie. Appeal, ¶¶ 15-16. Both agencies submitted their recommendations to City Council prior to its vote.

---

[3] "The lot contains a single family detached home, two rental units, 2 apartments in accessory buildings and a detached garage. It is a mixed-use parcel." Index of Record, Ex. A18.
[4] Said district is "to provide for higher density residential neighborhoods with a mix of housing types." Zoning Ordinance Article 103.07 (e).

3

A-5

The City held numerous public hearings where citizens, including Appellants, voiced their concerns and/or support for the Amendment. Id. ¶¶ 17-26. On December 18, 2018, City Council voted in favor of the Amendment by a vote of 4-3. Id. ¶ 21.[5] Appellants subsequently filed an appeal challenging the procedural validity of the Amendment, pursuant to 42 Pa.C.S.A. § 5571.1,[6] for a failure to comply with the applicable notice requirements of Article 1326.03(a) of the Zoning Ordinance and Section 609(b) of the Municipalities Planning Code ("MPC") on January 16, 2019. See 53 Pa.C.S.A. § 10609(b)(1); Zoning Ordinance Article 1326.03. Intervenor MSP filed a Notice of Intervention on January 30, 2019.

Appellants filed a Motion for Leave to Take Additional Evidence pursuant to 53 P.S. § 11005-A on March 15, 2019.[7] On July 26, 2019, this Court granted Appellants' motion and a non-jury trial was conducted on June 28-29, 2021. Appellants proffered the expert testimony of Dr. Paige Van Wirt and Matthew Malozi, in addition to the testimony of Darlene Heller, to support their procedural appeal. Intervenor called expert Mark Bahnick to support the procedural validity the Amendment.

---

[5] City Council also voted to ratify the Amendment on December 4, 2018 by a vote of 4-3. Br. of City, in Supp. of Procedural Validity, at 7.

[6] 42 Pa.C.S.A. § 5571.1 provides that "[t]his section shall apply to any appeal raising questions relating to an alleged defect in the process of or procedure for enactment or adoption of any ordinance, resolution, map or similar action of a political subdivision."

[7] 53 P.S. § 11005-A provides:

> If, upon motion, it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, a judge of the court may hold a hearing to receive additional evidence, may remand the case to the body, agency or officer whose decision or order has been brought up for review, or may refer the case to a referee to receive additional evidence, provided that appeals brought before the court pursuant to section 916.11 shall not be remanded for further hearings before any body, agency or officer of the municipality. If the record below includes findings of fact made by the governing body, board or agency whose decision or action is brought up for review and the court does not take additional evidence or appoint a referee to take additional evidence, the findings of the governing body, board or agency shall not be disturbed by the court if supported by substantial evidence. If the record does not include findings of fact or if additional evidence is taken by the court or by a referee, the court shall make its own findings of fact based on the record below as supplemented by the additional evidence, if any.

4

A-6

Dr. Van Wirt, a member of City Council who lives in the same area as the Property, testified as an expert in urban planning.[8] Dr. Van Wirt attested that the Amendment, in her opinion, was a map change because it altered the entire nature of the residential district by permitting non-residential uses. She was concerned about "commercial creep" deteriorating the fabric of the residential neighborhood.

She also voiced concerns about the unknown impact on the City as a whole, making reference to a list she had asked Ms. Heller to compile prior to a City Council meeting regarding properties that fall under the Amendment. (N.T., 06/28/21, at 74); Ex. 10. Ms. Heller compiled a list, based upon Dr. Van Wirt's specifications, that totaled approximately 140 properties; however, the parameters of Dr. Van Wirt's inquiry were not specifically tailored to the Amendment's exact requirements and likely included properties that were not applicable. Ex. 11.[9] Dr. Van Wirt also testified that multiple "procedural errors" were committed, such as the mayor's endorsement of the Amendment, the City's failure to adequately study the Amendment, City Council's failure to delay the vote at her request for further study, and Ms. Heller's failure to appear at the final vote. (N.T., 06/28/21, at 97-98).

Appellants also proffered the testimony of Mr. Matthew Malozi, a member of the Planning Commission[10], as an expert in civil engineering and land use planning. While Mr. Malozi raised concerns regarding the unknown impact of the Amendment, he testified that he was unaware of any procedural deficiencies in how this Amendment was enacted. (N.T.,

---

[8] The Court notes that, as a member of City Council, Dr. Van Wirt voted against ratifying the Amendment. See (N.T., 06/28/21, at 64-98).

[9] Dr. Van Wirt gave Ms. Heller three criteria to for the list, namely: (1) a complete list of properties in the RT and RG Districts that currently include a non-conforming use; (2) of that set of properties, those that include a residential component with a single or multi-family or apartment above the commercial component; and (3) of that subset, which lie on a corner. (N.T., 06/28/21, at 74).

[10] Mr. Malozi also voted against recommending ratification when the Planning Commission considered the Amendment. (N.T., 06/28/21, at 169-70).

5

A-7

06/28/21, at 168-73). Ms. Heller testified as-of-cross examination for Appellants as well. Ms. Heller has been the City's director of planning and zoning for the past 20 years. As to the list she had generated for Dr. Van Wirt, Ms. Heller explained that the list was really from "something other than a zoning ordinance analysis," due to the fact that the list was not tailored to the Amendment's specific requirements. (N.T., 06/29/21, at 84-90).

Finally, Mr. Bahnick, a professional engineer, testified for the Intervenor and opined that the Amendment was a text amendment, rather than a map change. (N.T., 06/29/21, at 133-34). He was also the individual who compiled a list of eight (8) properties that may fall under the Amendment that was presented to City Council prior to its vote. (N.T., 06/29/21, at 122-23).

At the conclusion of the hearing, Appellants were provided 60 days from receipt of the transcript to submit their brief. Appellees and Intervenor were provided with forty-five (45) days from receipt of Appellants' brief to file a response. The parties provided their briefs to the Court and the matter was praeciped for argument. Having received all relevant memoranda, the matter is now ripe for disposition.

### Standard of Law

This Court is empowered to hear Appellant's appeal regarding the procedural validity of the Amendment by 42 Pa.C.S.A § 5571.1, which provides:

> (d) Notwithstanding any other provision of law, appeals pursuant to this section shall be subject to and in accordance with the following:
> (1) An ordinance shall be presumed to be valid and to have been enacted or adopted in strict compliance with statutory procedure .
> &ast;&ast;&ast;
> (3) An ordinance shall not be found void from inception unless the party alleging the defect in statutory procedure meets the burden of proving the elements set forth in subsection (e).

6

A-8

42 Pa.C.S.A. § 5571.1 (d)(1),(3). "In the case of an appeal [pursuant to 42 Pa.C.S.A. §

5571.1(b)(1)], *the party alleging the defect must meet the burden of proving that there was a*

*failure to strictly comply with statutory procedure.*" 42 Pa.C.S.A. § 5571.1(e)(1).

Municipal Planning Code ("MPC") Section 10609 governs the notice requirements

surrounding the enactment of zoning ordinance amendments, explaining:

> (b) (1) Before voting on the enactment of an amendment, the governing body
> shall hold a public hearing thereon, pursuant to public notice, and pursuant to
> mailed notice and electronic notice to an owner of a tract or parcel of land located
> within a municipality or an owner of the mineral rights in a tract or parcel of land
> within the municipality who has made a timely request in accordance with section
> 109. In addition, if the proposed amendment involves a zoning map change,
> notice of said public hearing shall be conspicuously posted by the municipality at
> points deemed sufficient by the municipality along the tract to notify potentially
> interested citizens. The affected tract or area shall be posted at least one week
> prior to the date of the hearing.
> (2) (i) In addition to the requirement that notice be posted under clause (1), where
> the proposed amendment involves a zoning map change, notice of the public
> hearing shall be mailed by the municipality at least 30 days prior to the date of the
> hearing by first class mail to the addressees to which real estate tax bills are sent
> for all real property located within the area being rezoned, as evidenced by tax
> records within the possession of the municipality. The notice shall include the
> location, date and time of the public hearing. A good faith effort and substantial
> compliance shall satisfy the requirements of this subsection . . . .

53 P.S. § 10609(b). Further, as here, "[i]n the case of an amendment other than that prepared by

the planning agency, the governing body shall submit each such amendment to the planning

agency at least 30 days prior to the hearing on such proposed amendment to provide the planning

agency an opportunity to submit recommendations." 53 P.S. § 10609(c).

Article 1326.03 of the Zoning Ordinance also sets forth notice requirements, stating that:

> Notice of Hearings and Enactment. No such amendment or repeal shall become
> effective until after a public hearing in relation thereto at which parties in interest
> and citizens shall have an opportunity to be heard. Notice shall be given as
> follows:
> (a) Publish a notice of the time, place, and the general nature of such public
> hearing in a manner consistent with the Municipalities Planning Code.
> (b) When such hearing concerns a Zoning Map change, should give at least 30
> days' notice to abutting property owners, who shall be those persons whose

7

A-9

properties adjoin or are across the street from the property in question, and to the addresses to which real estate tax bills are sent for all real property located within the area being rezoned.

(c) A copy of the proposed amendment shall be forwarded to the Lehigh Valley Planning Commission at least 30 days prior to the public hearing by City Council.

(d) If the proposed amendment involves a Zoning Map change, notice of the public hearing shall be conspicuously posted by the City at points deemed sufficient by the City, along the perimeter of the tract to be rezoned at least one week prior to the date of the public hearing.

(e) Notice of the intended date of the vote on a proposed amendment to the Zoning Ordinance shall be provided consistent with the Municipalities Planning Code.

Zoning Ordinance Article 1326.03. Accordingly, if the Amendment was a curative text amendment, under Section 609 of the MPC, the City was only required to issue public notice of the public hearing. If, on the other hand, the Amendment represented a zoning map change, the City was obligated to conspicuously post notice at the affected properties and mail notices to the properties' taxpayers in addition to providing public notice.

In the course of hearing a procedural zoning appeal, if a court receives additional evidence, it must conduct a *de novo* review. Protect PT v. Penn Twp. Zoning Hearing Bd., 220 A.3d 1174 (Pa. Commw. Ct. 2019), appeal denied, 233 A.3d 677 (Pa. 2020).

### Discussion

By way of stipulation, all parties agreed that proper notice was given if the Amendment is a text amendment and that notice was deficient should the Amendment be a map change (N.T., 06/28/21, at 95). Thus, the main focus on appeal is whether the Amendment constitutes a map change or a text amendment under Pennsylvania law.

I.    The Amendment Constitutes a Text Amendment

A. Legal Standard

"The MPC does not define the terms 'curative text amendment' and 'zoning map change'"

Embreeville Redevelopment, L.P., v. Bd. of Supervisors of West Bradford Twp., 134 A.3d 1122,

8

A-10

1125 (Pa. Commw. 2016). Courts, however, evaluate the "overall effect of the changes" that the ordinance imposes on the existing zoning ordinance. Circleville Road Partners, L.P. v. Twp. of Ferguson, 209 A.3d 1125, 1129 (Pa. Commw. 2019)(citing Embreeville, 134 A.3d at 1137). An ordinance constitutes a map change if it is deemed a comprehensive zoning scheme that creates new uses that transform the entire nature of an existing zoning district so that it essentially creates a new land use category. Id. Here, a short survey of the tests and factors used by our courts to analyze this issue is warranted to aid in the Court's evaluation of the Amendment.

In Embreeville, the Commonwealth Court found that the ordinance in question constituted a map change, rather than a text amendment, because it "effectuated comprehensive change to the I-Industrial Zoning District," by allowing medium and high-density residential uses (i.e., garden apartments, multi-family dwellings, quadraplexes, townhomes, twins and duplexes) in the township's I-Industrial Zoning District. Id. at 1125 & 1127. The Embreeville ordinance amended the township's code to "revise the purpose of the I-Industrial District" to include a "variety of higher-density housing options ... within close proximity to nearby commercial centers [,]" increased conditional uses, and amended sections IV through X of the township's code to accommodate the new uses. Embreeville, 134 A.3d at 1128. Further, the ordinance amended the township's comprehensive plan by creating "a new future land use category was added called 'Medium to High-Density Residential.'" Id. It was emphasized that "whether a comprehensive zoning scheme exists cannot be based upon the number of proposed changes, but rather the overall effect of the changes." Id. at 1127.[11]

In Takacs v. Indian Lake Borough Zoning Hearing Bd., the Commonwealth Court considered an ordinance that "added uses to some ... zoning districts, including the addition of

---

[11] While not dispositive, the Shaw Court found the amount of changes to be a pertinent factor given the multitude of changes. Circleville Road Partners, L.P. v. Township of Ferguson, 209 A.3d 1125, 1132 n.4 (Pa. Commw. 2019).

9

A-11

multi-family structures and commercial boat docking as permitted uses in the Commercial-Recreational (C-R) District." 11 A.3d 587, 591 (Pa. Commw. 2010). The appellant argued that the ordinance constituted a map change and that the municipality failed to follow the proper notice requirements. Id. at 593. The Takacs Court rejected this contention, noting that generally, "the addition of permitted uses to a zoning district does not constitute a zoning map change." Id. The Court distinguished between the addition of permitted uses in a zoning district to ordinances that alter a zoning district's boundaries or that created entirely new zoning districts. Id. at 593 n.7.

In Shaw v. Twp. of Upper St. Clair Zoning Hearing Bd., 71 A.3d 1103, 1109 (Pa. Commw. 2013), the challenged ordinance was found to be a map change because, unlike in Takacs, the amendment added over "20 new uses and multiple pages of requirements that must be met in order for [an applicant] to engage in those uses." In so holding, the Commonwealth Court explained that whether an ordinance singles out a "discrete area" or tract of land within a particular district is also relevant to a map change analysis. Shaw, 71 A.3d at 1109.[12] The multitude of requirements caused the amendment in Shaw to only pertain to one parcel of land, the applicants'. Id.

Finally, in Circleville, the contested zoning amendment included four different categories of changes: (1) the allowance of dwelling units in a traditional town development ("TTD") to be used by a family or up to four unrelated persons; (2) allowing for drive-through facilities; (3)

---

[12] The Shaw Court explained:

> Whether an ordinance singles out a tract of land to which the ordinance is to apply is relevant to, although not dispositive of, the issue of whether the ordinance constitutes a text amendment or a map change. It is relevant to the extent that the ordinance affects the zoning of the particular tract of land in relation to other surrounding tracts of land located in the same zoning district. Specifically, if an ordinance contains changes that are so comprehensive in nature as to result in a substantial change to the manner in which the tract of land is zoned in comparison to the surrounding tracts of land that were similarly zoned, then that ordinance will constitute a map change.

Shaw, 71 A.3d at 1109.

10

A-12

providing the zoning hearing board with the ability to grant modifications from the design standards applicable to TTDs; and (4) amending certain design and dimension criteria. Id. at 1132-33. In finding the ordinance to be a text amendment, the Commonwealth Court held that the ordinance did not result in comprehensive changes to the character of the zoning district nor did it impose substantial changes to how one tract of land is zoned as compared to other properties similarly zoned because the changes applied to all similarly situated properties within the district. Id. at 1136-37 (citing Shaw, 71 A.3d at 1109; Embreeville, 134 A.3d at 1129).

B. Analysis

Here, Appellants contend that the subject ordinance is a map change because it is "an extension of the CB Commercial District onto the Property" that completely alters the entire nature of the RT and RG Districts. Memo. in Supp. of Appeal, at 32-33. They also suggest that Amendment constitutes a map change because of the alleged "complete void in understanding [of the Amendment's] impact upon the health, safety, and welfare for the citizens in Bethlehem." The Court disagrees with Appellant's assertions. The main focus of whether something constitutes a comprehensive zoning scheme, and as a result a map change, is whether, "the ordinance adds new uses that change *the entire nature* of the existing zoning district such that it, in essence, creates a new land use category . . . ." Circleville, 209 A.3d at 1130-31 (emphasis in original). Based upon the above-referenced caselaw, and the record before it, the Court finds that the Amendment does not constitute a comprehensive zoning scheme and that Appellants have failed to prove otherwise.

Article 1304.04(b) allows, by special exception, the conversion of a single-family dwelling into a professional office use where, *inter alia*, a lot contains a nonconforming commercial/retail use and is situated at the corner of two streets. See Zoning Ordinance Article

11

A-13

1304.04(b). The office uses allowed by this ordinance are, "limited to those of medicine, law, architecture, engineering, art, religion, music, insurance, real estate, psychology, accounting and financial services." Id.

Such an ordinance is readily distinguishable from those in Shaw and Embreeville; these permitted uses do not essentially create a new zoning district within the RT and RG Districts nor do they substantially change their residential nature. This conclusion is supported by the fact that such professional office uses, and other similar low impact non-residential uses, are already permitted by special exception in the RT and RG Districts. See Zoning Ordinance Article 1304.04(a).[13] Furthermore, while not dispositive, the Court notes that the Amendment only allows one permitted use, an office, and even controls the type of offices that are allowed.[14] Consequently, the Court finds that this permitted use, much like those in Takacs and Circleville,[15] does not carry such an impact as to completely change the nature of the RT and RG Districts nor does it change the City's zoning map or boundaries.[16]

As to the second factor, Appellants also contend that the Amendment impermissibly "singles out" the Property. Mem. in Supp. of Appeal, at 33. Unlike in Shaw, however, where the

---

[13] Zoning Ordinance Article 1304.04(a) allows for uses "such as but not limited to a professional office, barber/beauty shop, retail store, nail salon, coffee shop, retail bakery, art gallery, real estate office, photography studio, green grocer, cafe, or antique store."

[14] The Amendment also contains other means by which a zoning hearing board can ensure that a special exception does not overly impact the RT and RG Districts, such as allowing it to craft conditions for the granting of a special exception.

[15] Appellants attempt to distinguish the instant matter from Takacs by pointing to a supposed lack of due diligence in the pre-enactment phase on the part of City Council, proffering the testimony of Dr. Van Wirt and Ms. Heller in support. Mem. in Supp. of Appeal, at 30, 34-35. This argument, however, fails to persuade the Court. As the City persuasively mentions, the Takacs Court discussed the issue of the municipality's due diligence within the context of a spot zoning analysis, not within its procedural analysis. No case or statute cited by Appellants stands for the proposition that a supposed lack of pre-enactment due diligence has bearing on whether a municipality has strictly complied with the procedural requirements set forth in the MPC.

[16] In her testimony, Dr. Van Wirt faulted the City for numerous "procedural errors," such as City Council's failure to table the vote until further analysis was conducted, at her request, or the Mayor's endorsement of the Amendment. Mem. in Supp. of Appeal, at 33. Appellants have failed to cite any legal basis for why these actions violate either the MPC or the Zoning Ordinance and merely seem to be Dr. Van Wirt's own grievances with the process. Such complaints do not amount to procedural deficiencies as to invalidate the instant Amendment, thus the argument is denied.

12

A-14

ordinance only applied to the proposing landowner's parcel, the record indicates that the Amendment could apply to multiple lots within the RT and RG Districts. See (N.T. 06/28/21, at 118-19); (N.T., 06/29/21, at 96).

As a result, the Court finds that the evidence provided at the non-jury hearing, and relevant caselaw, suggest that the Amendment does not cause such substantial change to the RT and RG district as to be deemed a comprehensive zoning scheme, nor does it single out a discrete parcel creating an island. Thus, the Amendment is a text amendment, rather than a map change. Pursuant to the parties' stipulation, the City followed the statutorily proscribed notice procedures as they relate to a proposed text amendment and the instant appeal is **DENIED**.

## II.    The Underlying Transcripts Shall Not Be Admitted

Appellants also asks the Court to admit into evidence the transcripts from meetings before the Planning Commission and City Council, citing Baker and Appeal of Benech, 368 A.2d 828 (Pa. Commw. 1977) in support. Mem. in Supp. of Appeal, at 24-28. These arguments mirror the same arguments made by Appellants which this Court denied in its May 14, 2021 Order. See Order, Dally, J. 05/14/2021, at 8-9. Appellants do not proffer any new evidentiary averments as to why these exhibits should be admitted. Thus, pursuant to its May 14, 2021 Order, the Court **DENIES** the admission of these transcripts.

BY THE COURT:

CRAIG A. DALLY,                                    J.

13

A-15